## Vincent *versus* Watson.

*Confirmation of Account, effect of on Balance due by Accountant.—Not affected by the Statute of Limitations.*

1. The balance due a committee of an habitual drunkard in his account, after it has been regularly filed in the Court of Common Pleas, and absolutely confirmed, becomes a debt of record, the settlement of the account then being in the nature of a decree in chancery, and the balance a debt collectable by action or available as a set-off.

2. A. in 1825 loaned his father-in-law B. a sum of money on his single bill, upon which several payments were made. In 1839 A. was declared an habitual drunkard, and B. appointed his committee, who some years after was discharged. In 1849 an account of the trust was filed and confirmed in the Court of Common Pleas, showing a balance in favour of the committee. After the death of both, suit was brought in 1858 by A.'s administratrix, to recover the balance due upon the single bill, against B.'s executor, who set off in defence the balance due his testator in the account as settled, to which plaintiff replied that it was barred by the Statute of Limitations.

*Held,* that the balance due the committee in his account, as settled, was a proper subject of set-off, and that being a debt of record, the statute did not run against it.

ERROR to the Common Pleas of *Northumberland county.*

This was an action of debt on bill single brought in the court below, November 16th 1858, by Mary Vincent, administratrix of John Vincent, deceased, against John L. Watson, executor, &c., of David Watson.

The bill on which suit was brought was dated August 13th 1825, for the payment of $900, one year after date, with interest, and was signed and sealed by David Watson. On the back of the bill there were receipts for $500 paid November 12th 1827, for $100 paid May 6th 1833, and for $105 paid August 1st 1833.

[Vincent v. Watson.]

On the 7th of January 1840, John Vincent was formally declared an habitual drunkard, and David Watson appointed as his committee. The bill single above mentioned was not included in the inventory of Vincent's property.

On the 4th of August, John Vincent having reformed, was, on his petition, reinstated in the management of his property, but in a few years afterwards relapsed into his former habits; Mr. Watson continuing to receive from time to time, a large amount of the proceeds of his property.

On the 5th of April 1849, Mr. Watson filed his account as committee, showing a balance in his favour of $1579.55. The bill single, on which suit was brought, was not included in this account. This account was confirmed absolutely in August 1849. Vincent died intestate August 18th 1854; Watson died January 7th 1856.

The balance due on this bill, after deducting the payments endorsed thereon, was demanded by plaintiff, and payment being refused, this suit was brought as above stated.

To a declaration in the usual form, the defendant pleaded "payment," and "payment with leave," &c.

On the trial the plaintiff gave in evidence the bill single with its endorsements, and proved admissions of David Watson, made some fifteen years before, to the effect that he owed Vincent $300 or $350 on it.

The defendant offered in evidence the record of the proceedings *de inebrietate* above-mentioned against John Vincent, and the account of David Watson, as his committee, showing the balance above stated in favour of the committee.

This was objected to by plaintiff:—1st. Because the balance in the account of the committee, filed seven years after his discharge, created no liability against John Vincent or his estate, the payment being voluntary on the part of defendant's testator. 2d. Because it is barred by the Statute of Limitations. And 3d, Because the evidence was irrelevant.

The court below (JORDAN, P. J.) admitted the evidence, and at the close of the trial charged the jury in substance, that the plaintiff could not successfully interpose the Statute of Limitations to the balance due on the account of Watson as committee of Vincent; that the account was not now open for investigation, and that as the sum due on the account was greater than the balance claimed on the bill single, the plaintiff could not recover.

There was a verdict and judgment accordingly, whereupon the plaintiff sued out this writ, assigning here for error the ruling of the Common Pleas above stated.

*G. F. Miller* and *A. J. Guffy*, for plaintiff in error, cited and relied on Davis v. Shoemaker, 1 Rawle 135; Hinkly v. Walters;

8 Watts 264; Gemberling *v.* Meyers' Adm'rs, 2 Yeates 341; Man *v.* Wagner, 4 Wh. 479; Alexander *v.* Lecky, 9 Barr 120; Farly *v.* Kostenbader, 3 Barr 418; Lancaster County *v.* Brinthall, 5 Casey 38; and the rule of the court in equity requiring notice to be given of the filing of accounts of assignees or trustees in the Common Pleas.

*Joshua W. Comly*, for defendant in error, insisted that the decree confirming the account of Watson could not be assailed collaterally, that as it was the decision of a court of record, the proper action to be brought upon it is debt, to which the Statute of Limitations is not pleadable when founded upon such a cause of action: citing McLenachan *v.* The Commonwealth, 1 Rawle 357; Clark *v.* Callahan, 2 Watts 261; Evans *v.* Tatem, 9 S. & R. 361; Richards *v.* Polgreen, 13 S. & R. 400.

The opinion of the court was delivered, November 4th, 1861, by WOODWARD, J.—That the balance due to Watson on his account as committee of Vincent, was a debt for which action might have been brought, and which, therefore, was capable of being set off against the claim now in suit, will scarce admit of a doubt. The account was filed in the Common Pleas in April 1849, and confirmed absolutely the ensuing August. That was a judicial decree in favour of Watson for so much money. Unquestioned from that day to this, it is too late now for Vincent's administratrix to deny the liability of his estate.

But she insists that the debt is barred by the Statute of Limitations. It would be, if it were a simple contract debt. But the statute runs not against records, and the set-off here is a debt of record. The custody of lunatics and habitual drunkards, and of their estates, is committed by law to the Court of Common Pleas, which is a court of record. That court appoints and removes the committee at pleasure: 6 Harris 434; and settles and adjusts the accounts of the committee. Herein *it* acts as a Court of Chancery, exercising a jurisdiction which in England is committed to Chancery, and exercising it in chancery forms of procedure. The final settlement of the committee's account is a decree in chancery, and is enforced by the usual remedies.

Decrees of the Orphans' Court used to be regarded as something less than this, and hence, in an action of *assumpsit* by an administrator against his co-administrator, to recover a balance settled in the Orphans' Court, the Statute of Limitations was held to be well pleaded: Gemberling *v.* Myers' Administrators, 2 Yeates 341.

But no lawyer would think, at this day, of bringing an action of *assumpsit* for money decreed by an Orphans' Court. That court has grown long since to be a court of record, and possesses,

[Vincent *v.* Watson.]

by virtue of various statutes, full authority to issue executions in enforcement of its decrees: Shellenberg's Appeal, 7 Harris 337. A decree of the Orphans' Court would not now, therefore, be subject to the Statute of Limitations any more than a judgment or decree of the Court of Common Pleas.

The judgment is affirmed.