## Kerr's Appeal.

1. A judgment entered on a bond conditioned that the obligor will pay to the obligee the sum of all notes, checks, drafts and obligations of every kind or nature which B. has incurred or assumed, or may hereafter incur or assume, to a certain bank, is a lien for future advances as against interven- ·ing encumbrances only from the date of such future advances, and not from the date of the judgment.

. 2. The Bank of Montgomery's Appeal, 12 Casey 120, followed.

November 21st 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent. ˙

˙ Appeal from the Court of Common Pleas of *Butler county :* Of October and November Term 1879, No. 75.

Appeal of J. P. Kerr from the decree of the court confirming the report of the auditor appointed to distribute the proceeds of the sale of the real estate of David Armstrong.

The auditor found, inter alia, the following facts : David Arm- strong's farm of 114 acres in Butler county, was sold by the sheriff January 4th 1878, under a judgment in favor of Catharine C. Dewolf, for use. The amount realized was $2000, and an auditor was appointed to distribute the same.

˙ On February 11th 1875, a judgment of John T. Bard, for use of the Centreville Savings Bank, was entered against W. O. Brack- enridge and David Armstrong for $1000, interest, costs, &c. On February 11th 1875, a judgment of J. P. Kerr was entered against W. O. Brackenridge, George Maxwell and David Armstrong for $12,000, and on February 12th 1875, the executors of Samuel Braham, deceased, entered judgment against W. O. Brackenridge and David Armstrong for $2500, interest and costs.

As the Dewolf judgment was not revived in time to continue its former lien, and not until after the entry of the three judgments last above mentioned, nothing was claimed on it by Mr. Bard and the plaintiffs in these three judgments, each. claimed the fund or so much thereof as was necessary to satisfy their claims. It was, arranged by consent of all parties that the auditor should first allow in full the judgment of Bard for use, entered in 1875.

[Kerr's Appeal.]

Testimony was adduced by J. P. Kerr to show on what his judgment for $12,000 was based, and Kerr testified that the judgment was entered on a bond he took from Brackenridge, signed by W. O. Brackenridge, David Armstrong and George Maxwell to indemnify him for endorsements for Brackenridge in the First National Bank of Mercer, Pennsylvania. This bond contained the following recital:

"The condition of this obligation is such that if the above-bounden W. O. Brackenridge, his heirs, executors or administrators or any of them, shall and do well and truly pay, or cause to be paid unto the above-named J. P. Kerr, his executors, administrators or assigns, the just and full sum of all the notes, checks, drafts and obligations of every kind or nature which said J. P. Kerr has incurred or assumed, or may hereafter incur or assume, to the First National Bank of Mercer, Pennsylvania, for the said W. O. Brackenridge, including all the liabilities and obligations of said Brackenridge to said bank which said J. P. Kerr is to assume, in consideration of this bond, and shall for ever keep said J. P. Kerr free and clear of all costs, trouble and expenses in regard to said liabilities—without fraud or further delay—then this obligation to be void and of none effect; otherwise to remain in full force and virtue."

Kerr offered in evidence before the auditor the exemplification of the record from Mercer county, showing a judgment at August Term 1877, in favor of the first National Bank of Mercer against W. O. Brackenridge and J. P. Kerr, bail, for $362.95, judgment by confession on note with warrant of attorney, dated February 24th 1876. Also, two notes dated October 3d 1876, one for $1118.33 and the other for $1875.87, and it was admitted that these three items made up the full sum for which Kerr claimed to hold the judgment for $12,000, entered February 11th 1875. It was proven by the cashier of the bank, a witness called by Kerr, that the note for which the Mercer county judgment was entered was the original and only one in the transaction. The same witness testified that the $1118.33 note originated prior to August 1874, with George Maxwell as principal and W. O. Brackenridge as bail, and was renewed from time to time, and on March 24th 1875, Kerr became the endorser to the bank.

The cashier also testified that the note for $231.90, which was included in the $1875.87 note was endorsed by Brackenridge and Kerr and discounted by the bank on March 9th 1876. That the two other items comprised in this $1875.87 notes were drafts $1000, $500 drawn on Reems Brothers, Brooklyn, New York, endorsed by Kerr and discounted by the bank in 1874—one in August and the other in September. These drafts were renewed from time to time in the same shape and were sometimes protested for non-payment, but were carried in the bank until June 7th

1875, when they were continued by two drafts of $750 each, with the same parties, drawers, endorsers and acceptors, and payable to the bank in Mercer. This paper was in this shape carried by the bank until December 6th 1875, when one $750 draft was " continued " by a note directly to the bank and signed by Brackenridge and Kerr, and Reems Brothers were dropped out and the draft given up by the bank to Brackenridge. Then on. February 4th 1876, the other $750 went through a similar process and Reems Brothers were dropped out of it, the bank taking one note for $1500 to cover both note and draft. On May 16th 1876, this $1500, signed by Brackenridge and Kerr and the $231.90 note before referred to, were continued by one note, the one in evidence, for $1875.87.

It was contended that the Kerr bond for $12,000, being indemnity for future as well as present advancements or endorsements of Kerr for Brackenridge, and judgment on it being entered before the Braham judgment, it was entitled to priority, notwithstanding the fact that some of endorsements were subsequent to the entry of the Braham judgment. The auditor held that this was not the law and reported a distribution, first, to the judgment of Bard, for use, and second, to Braham's judgment. Exceptions were filed to this report which the court dismissed and confirmed the report. From this decree Kerr took this appeal and alleged that the court erred :

1. In confirming the auditor's report.  2. In not appropriating the whole fund to. the judgments of Kerr and Bard pro rata on their respective judgments.  3. In not appropriating sufficient of the funds to pay on the judgment of Kerr the Reems Brothers' drafts and interest embraced in the note of Brackenridge, and Kerr as bail, to the First National Bank of Mercer, calling for $1875.87, dated October 3d 1877.

*Thompson & Scott, McCandless* and *Griffith & Son*, for appellant.—The judgment of the appellant was the first entered, and first lien upon the land sold. That this debt, which originated in the Reems drafts, one of $1000 and one $500, existed at the time the Braham judgment was entered, on 12th February 1875, is not denied and is found as a fact by the auditor ; and the Kerr judgment should not have been postponed to the Braham judgment, to the extent at least of the Reems drafts and interest on them, which is now a part of the judgment note of the bank of Brackenridge and Kerr for $1875.87. A judgment or mortgage taken to secure the payment of an existing debt, and debts and liabilities to be created in future, has been held to be good and valid by numerous decisions: Lyle *v.* Ducomb, 5 Binn. 585 ; 4 Kent Com. 175, and the cases therein referred to ; Ter Hoven *v.* Kerns, 2 Barr 96.

The cashier testifies, that the two Reems drafts were discounted

[Kerr's Appeal.]

and owned by the bank, with Kerr as endorser, months before the entry of the Braham judgment; and the auditor so found, and that they entered into and made up the greater part of the $1875.87 judgment note of the bank against Brackenridge and Kerr. If the security now held are notes or securities given for the same debt they are renewals: Appeal of the Bank of Commerce, 8 Wright 428.

A continuing loan of the same credit by the issue of new notes from time to time, would be within the terms of the bond, and such notes would be secured by it: Gault v. McGrath, 8 Casey 392.

In the cases relied on by appellant, each case expressly provided for renewals or contained no clause forbidding renewals; and in all this class of cases it becomes a question whether the present debt is a renewal of a debt existing at the time of the entry of the subsequent judgment or mortgage, and this is a fact found in our favor by the auditor: Gault v. McGrath, supra; Bank of Montgomery's Appeal, 12 Casey 170; Bank of Commerce's Appeal, supra.

T. C. Campbell, for appellees.—Kerr was under no obligation after the date of this bond, to incur or assume any liability for Brackenridge, and, if he did so, the undertaking upon his part was purely voluntary. Such being the case, he was bound to take notice of junior and intervening recorded encumbrances, in the same manner as if he were about to accept of a new and independent liability from the party, having no reference whatever to any prior encumbrance: Ter Hoven v. Kerns, supra; Bank of Montgomery's Appeal, supra.

Cases in Pennsylvania, involving the question in this case, arising under judgments or mortgages given to secure future advances or to secure endorsers, may be divided into two classes; the first where the bond or mortgage provided for renewals, the second where it did not. In the first class are Gault v. McGrath, supra; Appeal of the First National Bank of Mt. Pleasant, 1 Norris 488. In the second, The Bank of Montgomery's Appeal, supra; Appeal of the Bank of Commerce, supra; McClure v. Roman, 2 P. F. Smith 458; Ayres v. Wattson, 7 Id. 360. There having been no provision made in the bond to Kerr, for renewals, this case would fall in the second class of cases.

There is no case where it is held that a renewal, where renewals are not provided for in the bond or the mortgage, would relate back to the original debt. A mortgage on land was given by one to secure the payment of notes given by another, "on the days they respectively mature and become due or payable." When the notes fell due, they were taken up and others given to the mortgagees. Held, that the mortgage, in law as well as in equity, was not a security for the renewal notes: Ayres v. Wattson, supra.

[Kerr's Appeal.]

Mr. Justice PAXSON delivered the opinion of the court, January 5th 1880.

This was a question of distribution. The appellant held a judgment of $12,000 against David Armstrong, whose real estate had been sold by the sheriff and the proceeds thereof paid into court. The judgment was entered February 11th 1875, and was given to indemnify the appellant for all endorsements, liabilities and obligations which W. O. Brackenridge, one of the obligors, had then assumed, or might thereafter assume, to the First National Bank of Mercer, Pennsylvania, on the same day a judgment was entered against said Armstrong in favor of John T. Bard for $1000. On the next day, February 22d, a judgment was entered against the same defendant in favor of the executors of Samuel Braham, deceased, for the sum of $2500.

The judgments of appellant and John T. Bard having been entered upon the same day, would, so far as their position on the record is concerned, be entitled to come in upon the fund pro rata. The auditor finds as a fact, however, that the parties when before him agreed, that the bank judgment should have priority. No agreement in writing to that effect was made and attached to the report, as it should have been, and the agreement itself is denied by the counsel for the appellant. The view which we take of the case dispenses with a discussion of this question.

The right of the appellant to come in upon the fund is resisted upon the ground that the notes of Brackenridge discounted by the bank upon which the appellant is liable, were made subsequent to the entry of the Braham judgment, and were therefore not protected by the appellant's cautionary judgment.

It is clear by the condition of the bond upon which said judgment was entered, that the endorsements of the appellant were voluntary. He was under no duty or agreement to make future endorsements, and there was no stipulation in the bond that it should cover renewals.

The only note for which it was contended the appellant was entitled to claim under his judgment, was a note of W. O. Brackenridge, with the appellant as bail, dated October 3d 1876, for the sum of $1875.87 and discounted by the First National Bank of Mercer. As this note was dated long after the Braham judgment, it is manifest under all our authorities, it was not prima facie entitled to any part of the fund. It was claimed that the said note was but a renewal of former notes upon which the appellant was responsible; in other words, that said note was given for a debt existing at and prior to the entry of the Braham judgment. Upon this point the auditor has found, upon what we regard as sufficient evidence, that the note in controversy was intended to cover a note of $231.90, which originated March 7th 1876, and two drafts of

[Kerr's Appeal.]

Reems Brothers aggregating $1500. The claim for the $231.90 is out of the case, under the authority of the Bank of Montgomery's Appeal, 12 Casey 170, in which it was held that "a mortgage given to secure the payment of notes, bills, &c., discounted, or thereafter to be discounted, for the mortgagors, and all their liabilities to the mortgagees of whatever kind that existed or might thereafter exist at any time, is a lien for future advances as against intervening encumbrances only from the date of such future advances and not from the date of the mortgage." In regard to the drafts of Reems Brothers, the auditor finds the fact that they were fully paid. He says: "We feel compelled to say that when Brackenridge and Kerr gave to the bank their notes of December 6th 1875, and February 4th 1876, these were in payment of the debt they owed as endorsees. They made a new contract entire, which was subsequent to the entry of Braham's judgment and must take subsequent." No exception was made in the court below, nor was error assigned here to this finding of the master. It was held in the Appeal of The Bank of Commerce, 8 Wright 423, that "evidence of the intention of the parties at the time of the discounts to consider the new notes as renewals of former notes preceding them in the series, is not admissible; for the question was one of fact whether or not they were renewals, and not what the parties intended or considered." The auditor here has found the question of fact against the appellant, and it is conclusive.

The decree is affirmed and the appeal dismissed at the cost of the appellant.