ELIZA A. NELSON, Appellant, v. C. F. BETTS ET AL., Respondents.

### St. Louis Court of Appeals, March 9, 1886.

| 21 | 219 |
| 39 | 288 |
| 21 | 219 |
| 43 | 277 |
| 44 | 258 |
| 21 | 219 |
| 53 | 72 |
| 21 | 219 |
| 56 | 132 |
| 21 | 219 |
| 170s | 6149 |
| 21 | 219 |
| 101 | 2615 |

1. PRACTICE—RE-OPENING CASE.—It is not error to refuse to re-open, on the ground of surprise, a case after its submission, for the purpose of hearing evidence which is merely cumulative.

2. EQUITY—PLEADINGS—JURY—PRACTICE.—The petition having been distinctly framed with a view of obtaining equitable relief, a failure to submit the issues to a jury is not error.

3. ———— JURISDICTION—FRAUD.—Equity takes jurisdiction of cases of fraud, in which cases the remedy in equity is concurrent with that at law.

4. ———— MISTAKES OF LAW.—Equity may relieve against mistakes of law which relate merely to legal rights in particular transactions, where the parties do not stand in equal positions, or where the mistake is induced by fraud or misrepresentations of the other party, or is seen and taken advantage of by him, or where there are circumstances which excite suspicion of fraud, imposition, misrepresentation, or undue influence on one side, or imbecility, credulity, or blind confidence on the other.

5. —— Inadequacy of Price.—Mere inadequacy of price is not a sufficient ground for equitable relief, but it may be so gross as to furnish evidence of fraud, and equity will take jurisdiction where there are additional circumstances of oppression on one side, and distress and submission on the other.

6. —— Equity having taken jurisdiction of an action will retain the cause and determine the whole matter in controversy.

7. —— Judgments.—In an equitable action for the cancellation of a mortgage which remains of record, the court may, if the facts warrant it, enter a money judgment in favor of the plaintiff.

8. —— Interest—Usury.—Usurious interest voluntarily paid can not be recovered back.

Appeal from the St. Louis Circuit Court. W H. Horner, Judge.

*Reversed and remanded.*

S. B. Gordon, for the appellant: The cause should have been submitted to a jury. Const. Mo., chap. 2, sect. 28; Rev. Stats., sects. 3600, 3602. "The action is properly brought under the statute and the practice of this state." Rev. Stats., sect. 3511; *Rutherford v. Williams*, 42 Mo. 18; *Alexander v. Relfe*, 74 Mo. 495 to 521; *Cadwallader v. West*, 48 Mo. 494; *Davis v. Luster*, 64 Mo. 45; *McClure v. Lewis*, 72 Mo. 324–5; *Dailey v. Jessup*, 72 Mo. 145; *Massey v. Young*, 73 Mo. 270.

T. J. Rowe, for the respondents. If a jury is not demanded, and no exception is taken to the action of the court in trying the case without a jury, this court will presume that a jury trial was waived. *The State v. Larger*, 45 Mo. 510; *Henry v. Beers*, 48 Mo. 366. In equity cases it is better for the court to try the whole case than to submit issues of fact to the jury. *Looker v. Davis*, 47 Mo. 140; *Hickey v. Drake*, 47 Mo. 369: *Burt v. Rynex*, 48 Mo. 309. The court is not bound to submit a question of fact to the jury. *Lockwood v. Linsford*, 56 Mo. 68. The verdict of a jury is not conclusive on the court in an equity case. *Page v. Dixon*, 59 Mo. 43. An entry that

the parties appeared and submitted the case for trial to the court is a sufficient entry to show a waiver of a jury. *Bruner v. Marcum*, 50 Mo. 405; *Tower v. Moore*, 52 Mo. 118. Where parties comply with the terms of an agreement that could not have been enforced against them, they can not repudiate it and recover back the money paid upon it merely because it could not have been enforced (*Mueller v. Wiebracht*, 47 Mo. 468; *Claflin v. McDonough*, 33 Mo. 412), or if paid under a mistake of the law. *Mutual Savings Institution v. Enslin*, 46 Mo. 200; *Wolfe v. Marshal*, 52 Mo. 167. Usurious interest paid upon a note can not be recovered back and applied as credits upon the note. *Kirkpatrick v. Smith*, 55 Mo. 389.

THOMPSON, J., delivered the opinion of the court.

The petition is in the form of a bill in equity embracing six paragraphs. The answer was a general denial. There was a trial before the court as in cases in equity, at the end of which the plaintiff stated to the court that a witness who had been subpœnaed for the plaintiff had been unable to attend by reason of sickness; that her testimony would fully corroborate that of the plaintiff in certain particulars, and asked that the further hearing of the case be continued until this witness could attend, which would probably be in a few days. The plaintiff, also, testified that the testimony of the two defendants had been a great surprise to her. The court, as the bill of exceptions recites, "refused said application on the ground that the plaintiff could not recover in the present form of action and pleading on any proofs, for the reason above stated, to wit, that the action was not equitable, as brought, but was a legal action for damages, and should have been brought in the form of a legal action; to which ruling and action of the court the plaintiff then and there excepted."

The bill of exceptions then goes on to recite as follows: "The hearing of the proofs was then closed, and

no other evidence was offered. December 5, 1884, the plaintiff requested the court to assign a time for argument of the case, which the court declined to do, on the ground as then stated that the court regarded the case as already submitted at the close of the hearing of testimony, and that plaintiff could not recover in the present form of action, as before stated by the court; but the court gave permission to the plaintiff to file affidavit and motion for setting aside the submission and receiving further evidence.''

The plaintiff thereafter filed an affidavit, by her attorney, to the effect that the testimony of the two defendants directly contradicted that of the plaintiff and was wholly unexpected by the plaintiff and her attorney and was a surprise to them; that the absent witness, already alluded to, whose affidavit was attached, had been subpœnaed, but was too ill to attend at the trial; that, as her testimony was merely corroborative of that of the plaintiff, which neither the plaintiff nor her attorney believed, or had reason to believe, would be contradicted, the plaintiff reluctantly consented to go to trial without her presence; that this witness was now sufficiently recovered to attend and would be able to attend on the further hearing of the case. The affidavit of the absent witness was also subjoined, stating the facts to which she would testify if allowed so to do, and those facts were simply corroborative of the facts testified to by the plaintiff. The bill of exceptions does not recite any disposition of this motion, but it recites as follows: "On February 16, 1885, the court decided and adjudged that said action could not be maintained in the then present form of the pleadings, the petition presenting a cause in equity when in fact it was a legal cause of action, and the petition should have so presented it, and for damages in the usual form of a legal action; and thereupon ordered that, for that reason solely, the action be dismissed by the court, unless the plaintiff should, within three days, voluntarily dismiss the same, and that in case of a voluntary dismissal, the

same to be without prejudice to plaintiff's rights." To this ruling the plaintiff excepted.

Subsequently, on March 30, 1885, the plaintiff having declined voluntarily to dismiss her action according to the permission above given, the court entered an order dismissing the same.

It is too plain for argument that the court committed no error in refusing to allow the case to be re-opened in order to hear corroborative evidence, after it had been heard and submitted by the parties. The whole matter addressed itself to the discretion of the court, and the facts disclosed do not show that the discretion was abused.

Among the grounds assigned in support of the motion for a new trial were, that the court refused and neglected to have the issues of fact tried by a jury, and erred in trying the issues of fact. With reference to this it may be said that the whole theory of the suit was that it was a suit in equity; the record nowhere shows that a jury was requested by the plaintiff, or that any objection was made to the court trying the issues of fact without a jury. But besides this, this objection is not only untenable, but absurd, from the fact, shown by the above recital, that the court never tried the case at all. The case was in the form of a suit in equity praying for equitable relief; and the court, being of opinion that the only substantial relief which could be granted would be in the form of damages as in an action at law, took the view that the action would have to be dismissed and tried in the form of an action at law. In this view we think the court was in error.

The bill recites, and the testimony establishes, a case of the most shameful oppression and extortion. The plaintiff was a married woman, having in her care a sick child, and her husband was prosecuting against her a suit for a divorce. She was in destitute circumstances, and applied to the defendant, C. F. Betts, for a loan of money upon the security of a mortgage upon her furniture. He went to her house, took an inventory of her furniture,

and agreed to lend her twenty-five dollars upon the security of a mortgage on the whole at the rate of ten per cent. per month. He gave her some sort of a paper to sign, which had not been filled out, and she signed it in ignorance of its contents, and supposing that it would be filled out to effectuate the understanding which she had with the defendant, C. F. Betts. The defendant, or some one else, afterward filled this instrument out, and being a notary public, the defendant, C. F. Betts, afterwards annexed an acknowledgment to it. The instrument, as thus filled out, purports to be a mortgage in favor of the defendant, R. H. Betts, made by the plaintiff upon her furniture to secure a certain promissory note of hers, of even date with the mortgage, not for the sum of twenty-five dollars, but for the sum of $37.50, payable thirty days after date. The mortgage contained a clause stipulating that the furniture should remain in the hands of the mortgagor until default, and contained other clauses which seem to be usual in chattel mortgages. A month later, when the plaintiff went to pay the first installment of monthly interest and have the loan renewed, she found that, instead of $2.50, which would be ten per cent. upon twenty-five dollars, she was required to pay $3.70. They told her that the additional charges were for drawing up the mortgagee, recording it, and going out to her house, and that she must pay interest at the rate of ten per cent. a month on the whole; that is to say, she must pay $3.75; but they were gracious enough to throw off the extra five cents and take $3.70. She paid interest at this rate monthly for several months; then, being in need of more money, she borrowed of a Mrs. Kelly fifteen dollars more, and, with the consent of the defendant, stored the goods with Mrs. Kelly while she made a visit to Kansas City. On returning, she found herself unable to keep up the payment of this usury, and the defendant thereupon notified her that he would take possession of the goods.

About this time the defendant Brandon appears opportunely upon the scene. He was a dealer in second

hand furniture, and had received a postal card from some one, he does not know whom—whether from the defendant or from the plaintiff—telling him to go and see the furniture. That was about a month before he finally got the furniture. He learned at the same time that there was a mortgage on it. A month later he purchased the furniture of the plaintiff, according to his own testimony, upon his own individual account, paying eighty dollars for it, "that is, fifteen dollars to Mrs. Kelly and forty dollars to Mrs. Nelson, the plaintiff, at Betts' office." This accounts for but fifty-five dollars, and the plaintiff and Mrs. Kelly both testified that that was all he gave for the furniture. The defendant C. F. Betts testifies that Brandon was not acting for him, or in his employ. According to the plaintiff's testimony, Brandon, when he first called on her with reference to the furniture, told her that he came from the defendant and the defendant sent him there; that he was the agent of the defendant; that he was Betts' man and dealt in Betts' second hand furniture. On cross-examination the plaintiff testified: "I first saw Mr. Brandon at Mr. Anderson's, 2735 Morgan street. He told me that the business he was engaged in was closing out furniture that Betts had mortgages on. He told me that he had closed out a man whose wife had died, and he took all they had." Mrs. Kelly does not directly testify as to the statements made by Brandon as to the character in which he appeared on the scene, except that she had an impression that he was representing Mr. Betts. Mrs. Kelly also testified: "She (the plaintiff) did not tell me to deliver up the goods to Brandon. He took them. She did not object. It seemed to be settled that he had to take them for that debt."

Of the fifty-five dollars which Brandon gave for the furniture, fifteen dollars went to Mrs. Kelly to discharge her lien; forty dollars was handed over by Brandon to C. F. Betts, of which he gave back $2.60 to the plaintiff, as he testifies. He was gracious enough to give her this

$2.60 because he had learned that she was a married woman at the time she made the mortgage, although two months' interest was in arrears. Brandon was, also, kind enough to allow the plaintiff to retain out of the furniture one or two articles of trifling value. According to the plaintiff's testimony, which is not contradicted, the value of the furniture, stated item by item, amounted in the aggregate to about one hundred and seventy-five dollars. The mortgage was never discharged of record, and the note, if any was given, does not appear to have been surrendered to the plaintiff. It should be added that the defendant R. H. Betts is the father of the defendant C. F. Betts, and that they appear to be engaged together in the business of making loans on household furniture.

We have recited the foregoing facts from the testimony, which is given in the bill of exceptions in a somewhat abridged form. The petition recites these facts substantially as the evidence tends to prove them. The petition recites, in its third paragraph, that when the claim was first made by the defendant C. F. Betts that the plaintiff should pay interest at the rate of $3.74 per month (should be $3.75), she remonstrated, but was assured by the defendant and his father, Robert H. Betts, that it was legal and just. She also states in the fourth paragraph that she consented to Brandon taking the property, believing that if he did not do it the defendant C. F. Betts would take it, and leave the debt due to Mrs. Kelly unpaid. In the fifth paragraph she again recites that the defendant C. F. Betts assumed and claimed a lien upon the property for the sum of $37.50, and interest thereon, as already stated, claiming that he had a right to, and did restrict the plaintiff in the storing and use of the furniture to such places only as he consented to, and often threatened to the plaintiff and others in charge of the furniture, and to the plaintiff's friends, that, in case of default or delay in the payment of the monthly interest, so called, of $3.74, he would take the furni-

ture, and that on and after August 15, 1881, he and Brandon assumed and claimed to the plaintiff, that by reason of said debt's lien and defaults the furniture belonged to the defendant. The sixth paragraph charges: "That all of the several statements, representations, and acts of each of the defendants in the premises are and were by each of them known and intended to be false and fraudulent, and wrongful and coercive of the plaintiff and contrary to her wishes and interests, and with intent by themselves, and also conspiring together, to cheat and defraud this plaintiff, and by their power, undue influence, and control over her and her said property, to coerce her into her several acts in the premises; that plaintiff fully believing and relying upon the statements, representations, and claims of said several defendants, and being thereby deceived and coerced to her several acts, assented and yielded to the claims and assumptions of the defendants and each of them in the premises, and not otherwise." The seventh paragraph recites that the defendant still has the pretended mortgage, and that it remains undischarged of record in the office of the recorder of deeds, to the injury of the plaintiff's credit, etc. The petition also charges that the taking of the furniture by the defendants C. F. Betts and Brandon was a conversion, and that the plaintiff has been damaged thereby in the sum of five hundred dollars.

The petition concludes by praying for the following relief: 1. That the mortgage be declared fraudulent and void and be delivered up to her and discharged of record. 2. A judgment for the amount of her damages in the premises, less such equitable amount as shall be due from her. 3. For general relief.

It is very clear that this petition states a case entitling the plaintiff to equitable relief on two different grounds: 1. If the agreement between her and the defendant was that the defendant should loan her twenty-five dollars upon interest at the rate of ten per cent. per month upon the security of a mortgage of her furniture,

and she signed in blank an instrument intended and understood to be so framed as to effectuate this agreement, and if the defendant filled it out in the form of a mortgage for $37.50, and wrote a pretended acknowledgment of the plaintiff thereto, this upon its face, was not only a fraud, against which a court of equity would relieve the plaintiff, if the suit were seasonably brought, but it was also a forgery. 2. The statement that the mortgage remains undischarged of record, to the injury of the plaintiff's credit presents a proper ground for equitable relief; and we take the view that whatever the opinion of the learned judge might have been as to the right of the plaintiff to relief in the form of a judgment for money, upon the other facts of the case, she was entitled to have a decree cancelling this mortgage and discharging it of record. In this view, alone, the judgment dismissing the suit was erroneous, though this error was not, perhaps, very prejudicial to the plaintiff.

The plaintiff's right to the more substantial relief which she seeks, upon the first ground above stated, viz., that the defendant C. F. Betts fraudulently filled out above her signature and put upon record a contract which she never made, would be clear, but for the fact of her voluntary waiver of her rights in the premises, after being apprised of what the defendant C. F. Betts had done, by making three several payments of the extortionate usury which he required her to pay. These subsequent payments, if made with knowledge of her legal rights in the premises, were equivalent to a ratification of the act of the defendant in filling out the mortgage as he did; but if they were made in ignorance of her legal rights in the premises, which ignorance was promoted or induced by the defendants, or taken advantage of by them, in representing to her that the mortgage was a valid lien upon her furniture, then the payments would not conclude her; the maxim *volenti non fit injuria* would not apply, and she would be entitled to substantial relief. It is to be observed that the petition does not charge in so many

words that the plaintiff was ignorant of her legal rights in the premises. But the plaintiff was a woman in great distress of mind, without the counsel and assistance of her husband, and, so far as appears, without any other counsel or competent advice in the premises. The defendant C. F. Betts was evidently a shrewd and hardened usurer. The petition does not state in direct terms that the plaintiff believed and relied upon the statements of the defendants C. F. and Robt. H. Betts that their lien to the amount of $37.50 was a valid lien; but it charges in a general way that she was deceived by the several statements, representations, and acts which she recites, and yielded to the claims and assumptions of the defendant, in consequence of being so deceived. The allegations of the petition, taken together and fairly interpreted, indicate that the plaintiff was ignorant of her legal rights in the premises. If she submitted to their fraudulent and oppressive acts in consequence of her ignorance of such rights, she did not thereby waive her rights, but remains entitled to substantial relief in equity.

The rule on the subject of the right of relief in equity, on the ground of mistake of law, is this: As a general rule such right does not exist. Every person is presumed to know the law, and no person will be heard in a court of justice to allege, in extenuation of his own fault, or as a ground of relief, his ignorance of the general law of the land. But the rule does not apply in respect of the ignorance of a person as to his rights in a particular case, especially where that ignorance is superinduced by the misrepresentation or fraud of the other party. The rule is thus stated by a writer of recognized authority: "When a man, through misapprehension or mistake of the law, parts with or gives up a private right of property, or assumes obligations upon grounds upon which he would not have acted but for such misapprehension, a court of equity may grant relief, if, under the general circumstances of the case, it is satisfied that the party benefited by the mistake can not in conscience retain the

benefit or advantage so acquired." Kerr on Fraud and Mistake, 468 (citing many authorities). Further on the same writer says : " If a mistake of law, or as to his private right, be that of one party only to a transaction, it may either be that the mistake was induced or encouraged by the misrepresentation of the other party, or that, though not induced or encouraged, it was known to and perceived by him, and so taken advantage of ; or it may be that he was not aware of the mistake. Whatever may be the circumstances of the case, a court of equity, under the peculiar circumstances of the case, grants relief." *Id.* 470. Our own decisions seem not to have stated this rule as broadly as the above writer has stated it. They are to the effect that there must be something more than mere ignorance of law in order to entitle a contracting party to relief in equity. The circumstances attending the making of the contract must be such as excite suspicions of fraud, imposition, misrepresentation, or undue influence, on the one side, and imbecility, credulity, or blind confidence, on the other (*Dailey v. Jessup*, 72 Mo. 144), and that equity will grant relief where there are such elements as absence of consideration, reliance upon the representations of the other party, surprise, mutual mistake, and unconscionable advantage. *Griffith v. Townley*, 69 Mo. 13, 22. To the same effect is *Faust v. Birner*, 30 Mo. 414, 419.

Most of these elements, which separately are sufficient to take a case out of the general rule that equity will not relieve a party on the mere ground of mistake of law, concur in the case before us, if the allegations of the petition and the plaintiff's testimony be true. There was here "suspicions of fraud," "misrepresentations," "imposition," "undue influence," "unconscionable advantage," on the one side, and, if not "imbecility," at least, "credulity," on the other ; and, what is more, a feeling on the part of the plaintiff that she was absolutely helpless in the hands of the defendants.

Again, the monstrous disproportion between the ben-

efit which the plaintiff received and the right with which she parted and the obligation which she assumed, can not fail to arrest the attention. The general rule is that mere inadequacy of price or consideration is no ground for claiming the rescission of a contract in equity. *Phillips v. Stewart*, 59 Mo. 491. Equity does not undertake to act as the guardian of mankind. It does not aid people who make foolish bargains. But there are exceptions to the rule, which apply with peculiar force, where the parties do not stand in equal stations, do not possess equal knowledge, and where there are circumstances of fraud and oppression, on the one part, and of distress and submission, on the other. *Durfee v. Moran*, 57 Mo. 374; *Railroad v. Brown*, 43 Mo. 294. In many such cases a shocking inadequacy of price or of consideration, without more, is held to be evidence of fraud, and courts of equity grant relief, not on the ground of inadequacy of consideration, but on the ground of fraud shown by the shocking inadequacy of consideration. As stated by the writer already quoted from: " Inadequacy of consideration, if it be of so gross a nature as to amount in itself to conclusive and decisive evidence of fraud, is a ground for cancelling a transaction. In such cases the relief is granted, not on the ground of inadequacy of consideration, but on the ground of fraud as evidenced thereby." Kerr on Fraud and Mistake, 161 (citing many authorities). The monstrous inadequacy between the benefit the plaintiff received in the loan of the small sum of twenty-five dollars and the monthly interest which she was compelled to pay, amounting to $3.70, is, to say the least, strong evidence of fraud and imposition on the part of the defendant C. F. Betts.

We do not suppose it necessary to cite authorities to the proposition that fraud is a ground of relief in equity. Fraud is one of the recognized heads of equity jurisdiction. In respect of fraud the jurisdiction of equity is concurrent with that of law. *Stewart v. Caldwell*, 54 Mo. 536. Moreover equity has jurisdiction on the ground

of fraud in many cases where the only relief the plaintiff can have is the recovery of the money which he has lost by the fraud. This has long been the recognized rule of equity. We do not suppose that the question has been much doubted since the decision in 1723, in the case of *Colt v. Woolaston* (2 P. Wms. 153), that a bill in equity lies to recover back money which a person has been induced through fraud to invest in a "bubble."

The circumstance, that the only relief to which a plaintiff may be entitled may be a judgment for the recovery of money, does not oust the jurisdiction of equity. This is especially so where the jurisdiction of equity attaches on the ground of some other form of relief prayed for, as where the plaintiff prays for the cancellation of a written instrument obtained through fraud. Upon this subject it is said by the late Professor Pomeroy in his work on Equity : "If a court of equity obtains jurisdiction for the purpose of granting some distinctive equitable relief, such, for example, as the specific performance of a contract, or the rescission or cancellation of some instrument, and it appears from the facts disclosed at the hearing, but not known to the plaintiff when he brought the suit, that the relief prayed for has become impracticable, and the plaintiff is entitled to the only alternative relief possible, of damages, a court then may, and generally will, instead of compelling the plaintiff to incur the double expense and trouble of an action at law, retain the case, decide all the issues involved, and decree the payment of merely compensatory damages." Pom. Eq. Jur., sect. 327.

The principle was thus stated by Judge Wagner : "It is a well established rule that when a court of equity once acquires jurisdiction of a case, it will retain it to do full and complete justice. It will sometimes give damages, which are generally recoverable only at law, in lieu of equitable relief, where it has obtained jurisdiction on other equitable grounds." *Holland v. Anderson*, 38 Mo. 55, 58; quoting *Wiswall v. McGown*, 2

Barb. S. C. 270. When, therefore, the action was for the cancellation of a contract for an exchange of lands, for the rescission of the contract, and for general relief, and the specific relief prayed for could not be granted because the property had so changed that the parties could not be put *in statu quo,* Judge Wagner entertained no doubt about the petition being sufficient, under the general relief clause, to enable the plaintiff to obtain compensation, provided he made out a case showing that he was entitled to such relief. *Holland v. Anderson, supra.* We have already indicated that the plaintiff's right to have the mortgage cancelled and discharged of record is a substantial head of equity jurisdiction. This being so, the case should be retained in the court as a court of equity, and complete justice should be done, so far as possible, under the facts which the evidence makes out.

Instead of this, the cause was not tried at all. Possibly the bill of exceptions, although the testimony is presented in narrative form and manifestly with considerable abbreviation, might afford ground upon which a decree could be made in this court in favor of the plaintiff for substantial relief ; but we think that in such a case, before we should try the case upon the evidence, it should be heard by the circuit judge sitting as a chancellor. The witnesses will be before him ; he will hear their testimony, observe their manner of giving it, and have opportunities of weighing it which we do not possess. We shall be better prepared to decide the case upon its merits when we shall have his decision upon the facts which may be presented upon another trial. We therefore, think that we exercise our jurisdiction most wisely if we reverse the judgment and remand the cause, with directions to the court to grant a new trial, and to proceed therein in conformity with the principles stated in this opinion. The plaintiff should be allowed to amend the petition, if desired, so as to charge mistake of law on the part of the plaintiff, and so as to make the

charges of fraud and misrepresentation, on the part of the defendants, more specific. If it shall appear that Brandon was acting as the mere agent of the other defendants, or that they were engaged in a conspiracy together to defraud the plaintiff out of her legal rights, by inducing her to believe that the mortgage of the plaintiff was a valid lien to the extent therein claimed upon her furniture, and that it was necessary for her to sacrifice it for the price paid by Brandon, in order to get money enough to repay the amount loaned thereon by Mrs. Kelly, a decree for the recovery of what the plaintiff has lost by reason of the transaction should go against all the defendants. Equity does not aid a party to recover back usurious interest. The plaintiff will not be entitled to recover, under the evidence as it now appears, anything on account of the interest which she may have paid upon the sum of twenty-five dollars at the rate of ten per cent. a month, according to the original agreement, and her recovery, if any, will have to be limited to the difference between the actual market value of her furniture and the amount she received for it, adding thereto amounts she was compelled to pay in ignorance of her rights, in excess of the debt voluntarily contracted.

The judgment will be reversed and the case remanded. It is so ordered. All the judges concur.