Henry Hagemann, Respondent, v. Barbara Pinska et al., Appellants.*—37 S. W. (2d) 463.

St. Louis Court of Appeals.   Opinion filed April 7, 1931.

*Nolan & Garvey* for appellants.

*Louis Martin Wolf* and *Henson & Woody* for respondent.

BENNICK, C.—This is a suit in two counts, the first for an injunction to restrain the sale of certain land under an execution, and the second in ejectment.

Defendant Barbara Pinska is the divorced wife of one Otto Pinska, who was the owner of certain real estate located in St. Louis county, which is involved in this proceeding. The decree of divorce was rendered in favor of defendant Barbara Pinska, in the circuit court of St. Louis county, on February 21, 1928, and by its terms she was awarded the sum of $3,000 as alimony in gross, and was given the custody of the two minor children, Edward and Barbara. Satisfaction of the judgment for alimony in gross was duly acknowledged by Mrs. Pinska on March 17, 1928, and that feature of the judgment no longer figures in the case.

The original decree of divorce made no provision for the support and maintenance of the minor children; and at the September, 1928, term of court, Mrs. Pinska, filed her motion, calling the attention of the court to the fact that the decree was silent in that respect, and asking that the father be ordered and directed to pay her a fair and reasonable amount for such purpose, and that the decree of divorce be modified accordingly. On October 27, 1928, the motion was sustained, and it was ordered by the court that "said defendant (Barbara Pinska) have and recover of said plaintiff (Otto Pinska) the sum of $10 per week for the support and maintenance of said minor children, said order to take effect forthwith, and that said defendant vacate the premises belonging to plaintiff."

Seemingly, as a feature of the property settlement entered into at the time of or shortly following the rendition of the decree of divorce, the real property theretofore owned by the parties in the entirety was placed in the sole name of Otto Pinska; and on November 2, 1928, or six days after the modification of the decree so as to require Pinska to make weekly payments for the support of his children, he conveyed the property by warranty deed to Henry Hagemann, the plaintiff herein.

The weekly payments were not made by Pinska as required by the modified decree, and on May 23, 1929, execution for the sum of $280 then due and unpaid was sued out by defendant Barbara Pinska upon the judgment, and placed in the hands of defendant Lill, the sheriff. Levy was thereupon made by the sheriff upon the real estate owned by Pinska at the time of the rendition of the judgment, and thereafter conveyed by him to plaintiff herein, and a sale thereof was advertised.

So much for the undisputed facts of the case, which led to the institution of the present suit on July 6, 1929.

The first count of the petition set up that plaintiff (Henry Hagemann), by virtue of the conveyance from Otto Pinska on November 2, 1928, was the owner in fee simple of the real estate levied upon by the sheriff; that the execution was issued, and the levy made, subsequent to his purchase of the property; that he was the sole owner of the property, and that neither Otto Pinska nor Barbara Pinska had any right, interest, or title thereto; that the sale under execution, if permitted to be made, would cause irreparable damage to him; and that he had no full, adequate, and complete remedy at law to secure the peaceful enjoyment of his property. The prayer was that defendants be enjoined and restrained from selling, or further offering for sale, the real estate in question, and for such other and further orders and judgments touching the premises as to the court should seem just and proper.

The second count of the petition stated the ordinary cause of action in ejectment, alleging that plaintiff was the owner in fee, and entitled to the possession, of the real estate described therein; that defendant Barbara Pinska had entered into possession of the premises, and was withholding the possession thereof from plaintiff to his damage in the sum of $2,000; and that the reasonable rental value of the premises was $40 a month. Plaintiff prayed for judgment against Barbara Pinska for the possession of the premises; for the sum of $2,000 as damages for the unlawful withholding of possession; and for the further sum of $40 a month from the rendition of the judgment until possession was restored to plaintiff.

The separate answer of defendant Lill was, in effect, a general denial; and so also was that of Barbara Pinska, her cross-bill having been dismissed by her counsel at the close of all the evidence.

The entire case was tried to the court alone, resulting, on March 20, 1930, in the entry of a judgment for plaintiff on the first count of his petition, making the temporary injunction theretofore issued permanent, and enjoining and restraining defendants, and each of them, from selling or offering for sale the tract of land levied upon. On the second count of the petition, the court found that plaintiff was entitled to the possession of the premises on November 3, 1928, the date mentioned in the petition; that Barbara Pinska had wrongfully withheld the same; and that plaintiff should have damages in the sum of $300, with interest, and monthly rents and profits at the sum of $35 a month from the date of the judgment until the restitution of the premises.

Upon the entry of such judgment, a motion for a new trial was filed; and it being overruled, defendants have duly perfected their appeal to this court.

As to the judgment entered upon the first count of the petition, defendants make the point that the court was in error in issuing the permanent injunction whereby they were restrained and enjoined from selling the tract of land theretofore levied upon under the execution. In support of their contention, they argue that the judgment of October 27, 1928, requiring Otto Pinska to pay defendant Barbara Pinska the sum of $10 a week for the support of the minor children, became, at the time of its rendition, a lien on his real estate situated in St. Louis county; that such lien was a continuing one; that the real estate was thereafter conveyed to plaintiff herein subject to said lien; that the land was subject to be sold to satisfy the same; and that consequently, the temporary injunction theretofore issued should have been dissolved, and judgment rendered for defendants on the first count.

In other words, we have the question (which seems to be one of first impression in this jurisdiction), of whether the ordinary judgment for the maintenance and support of minor children, payable in future installments, constitutes a lien upon the real estate of the judgment debtor situated in the county wherein the judgment is rendered, so as to take priority over a subsequent conveyance of the land by the judgment debtor to a third person. In this connection it will be borne in mind, as has been heretofore stated, that the judgment of the court was rendered on October 27, 1928; that on November 2, 1928, or within the first week thereafter, the conveyance was made by warranty deed to plaintiff; and that an execution was not sued out pursuant to the judgment until May 23, 1929, some seven months after the conveyance of the property.

Judgment liens are purely creatures of statute, and owe their life and effect to legislation. [34 C. J. 569.; 15 R. C. L., p. 794, sec. 250.] So far as our own jurisdiction is concerned, the general statute is section 1104, Revised Statutes 1929, which provides that "judgments and decrees rendered by any court of record shall be a lien on the real estate of the person against whom they are rendered, situate in the county for which the court is held." The next succeeding section (section 1105, R. S. 1929) provides that "such liens shall commence on the day of the rendition of the judgment, and shall continue for three years," subject to be revived as thereinafter provided.

Defendants argue that the comprehensive language of such sections seems to include every judgment or decree of a court of record which involves the payment of money; that the judgment rendered in the case at bar falls squarely within that category; and that consequently, any transfer of the real estate of Otto Pinska, from and after October 27, 1928, was subject to the lien of the judgment rendered on that day.

Apart from any consideration of statutes, the general rule with reference to the creation of a judgment lien is "that there shall be a judgment, which is final, valid, and subsisting, and rendered by a lawfully and validly constituted court, for the payment of a definite and certain sum of money, capable of collection by execution against the debtor's property." [34 C. J. 570; 15 R. C. L., p. 794, sec. 249.]

The case law upon the question of whether a judgment for alimony or maintenance of the character involved in this proceeding constitutes a lien upon the real estate of the judgment debtor, presents a divergence of opinion among the courts of other jurisdictions where the point has arisen for decision.

In some states where local statutes either expressly declare that all judgments for alimony or maintenance shall be liens upon the real estate of the judgment debtor, or else provide that the court may by its decree adjudge such a lien to exist, the lien is necessarily held to exist where the particular statutory requirements have been met. The leading cases so holding are Goff v. Goff, 60 W. Va. 9, 53 S. E. 769, and Isaacs v. Isaacs, 117 Va. 730, 86 S. E. 105.

However, in other jurisdictions, where the local statutes are more nearly like our own, a different result is reached. These decisions represent the decided weight of authority; and aside from statute, and in conformity with the general rule stated above in relation to the creation of judgment liens, they hold that a judgment or decree awarding alimony or maintenance in a gross sum is definite and certain as to the sum to be paid, as is also a decree in regard to past due or unpaid installments; that in such instances the amount due and to be paid to discharge the lien is certain and definite, and if sought to be enforced by execution, the amount due and unpaid can be stated in the writ; and that in all such cases the judgment will constitute a lien, because it is for a definite and certain sum of money, and will authorize the present issuance of an execution for its enforcement. But as to judgments and decrees awarding alimony or maintenance which is to be paid in future installments over an indefinite period (such as in the case at bar), the cases draw a very plausible distinction. They hold that payment of such future installments is not enforceable by execution or otherwise at the time of the rendition of the judgment because not due; that should they be regarded as secured by a judgment lien, the amount of the lien for purposes of payment and discharge could not be ascertained because of the uncertain and indefinite period of the installments; and that therefore, if ever a lien is to attach to the debtor's real estate, it will not follow from the general judgment, but will rather be acquired by virtue of an execution issued under the same. This view of the law is to be gathered from such authorities as Beesley v. Badger, 66 Utah 194, 240 Pac. 458; Scott v. Scott,

80 Kan. 489, 103 Pac. 1005; Mansfield v. Hill, 56 Ore. 400, 107 Pac. 471, 108 Pac. 1007; Campbell v. Trosper, 108 Ky. 602, 57 S. W. 245; 'Bird v. Murphy (Cal. App.), 256 Pac. 258; Kerr. v. Kerr, 216 Pa. 641, 66 Atl. 107.

Such general considerations with reference to the creation of judgment liens could very well serve to be decisive of the point at issue, were it not for the effect of certain language to be found in the decisions of the appellate courts of this State. It has been frequently said that a judgment for permanent alimony, though decreed to be paid in installments, is subject to the incidents of other judgments, except in so far as the statutes provide otherwise by expression or implication (Dreyer v. Dickman, 131 Mo. App. 660, 111 S. W. 616; Hauck v. Hauck, 198 Mo. App. 381, 200 S. W. 679); and likewise, that a judgment for alimony, whether in gross or payable in installments, is a debt of record as well as any other judgment for money, and is a judgment in an action at law, secured by statutory liens, and enforceable by execution. [Nelson v. Nelson, 282 Mo. 412, 221 S. W. 1066; Remmers v. Wolf's Estate, 206 Mo. App. 159, 226 S. W. 290.]

We appreciate the fact that the cases cited are primarily based upon the right of revival of a judgment for alimony after the expiration of a period of ten years from its rendition, and not upon the question of whether a lien follows a judgment for payments to be made in periodical installments; and also, that an award of alimony is one thing, and an allowance for the maintenance of minor children is another. It is enough to say in this connection that alimony is for the support of the divorced wife herself; that maintenance has reference to the support of the minor children of the marriage, though the payments are made to the wife; and that the statutes contemplate a separate allowance for each. [Lukowski v. Lukowski, 108 Mo. App. 204, 83 S. W. 274; 9 R. C. L., p. 482, sec. 297.]

But while the two allowances are designed to serve different purposes and to attain different results, yet the essential character of the respective judgments is the same, and language which is appropriate to the force and effect of a judgment for alimony is equally applicable to one for maintenance, unless there is something about the statutes which enables a distinction to be drawn between the two. We shall proceed upon the assumption, therefore, that the judgment now under consideration was a judgment for money, and that it was subject to the incidents of other money judgments, except to whatever extent specific statutes may have provided otherwise by direct expression or necessary implication.

There are two statutes which have more or less application to the situation at hand, the same being sections 1355, 1356, Revised Statutes 1929. The first section provides that when a divorce shall

be adjudged, the court shall make such order adjudging the alimony of the wife, and the care, custody, and maintenance of the children, as from the circumstances of the parties, and the nature of the case, shall be reasonable; that when the wife is plaintiff, the defendant may be ordered to give security for such alimony and maintenance; and that upon his neglect to give the security required of him, or upon default of himself and his sureties to provide such alimony and maintenance, the court may award an execution for the collection thereof, or enforce the performance of the judgment or order by sequestration of property, or by such other lawful ways and means as is according to the practice of the court.

The second section provides that upon entry of a decree of divorce in favor of the wife, the court may, in its discretion, decree alimony in gross, or from year to year; that when alimony is decreed in gross, such decree shall be a general lien on the realty of the party against whom the decree may be rendered, as in the case of other judgments; that when the decree is for alimony from year to year, the decree shall not be a lien on the realty, as aforesaid, but an execution in the hands of the proper officer, issued for the purpose of enforcing such decree, shall constitute a lien on the real and personal property of the defendant in such execution, so long as the same shall lawfully remain in the possession of the officer unsatisfied; that in lieu of the lien of such decree for alimony from year to year, the party against whom the decree is rendered shall be required to give security ample and sufficient for such alimony; and that where default is made in giving such security, the decree for alimony from year to year shall be a lien as in the case of general judgments.

Thus the question of whether a judgment for alimony, payable in periodical installments, is a lien upon the judgment debtor's real estate, is definitely settled by statute. Such a judgment, as distinguished from a judgment for alimony in a definite and certain gross sum, is primarily not a lien, but in lieu of a lien, the statute contemplates that the husband shall be required to give security for the payment of his obligation, and it is only upon default in the giving of such security that the judgment operates as a lien. [Endres v. Hadeler (Mo. App.), 220 S. W. 1002, 1003.]

But unfortunately, in the enactment of what is now section 1356, Revised Statutes 1929, the Legislature, either purposely or through inadvertence, did not include a judgment for the support and maintenance of minor children within its terms. It is argued that having specifically dealt with the lien of a judgment for alimony, the Legislature necessarily intended that all other features of the divorce decree, such as the award of maintenance for the support of the minor children, should stand upon a different footing.

Were section 1356, Revised Statutes 1929, the only statute upon the subject, we suspect that we would be forced to such a conclusion. But section 1355, Revised Statutes 1929, elaborates in great detail upon the nature of the judgment, both for alimony and for maintenance, that the court may give, and the means by which the same may be enforced. If such a judgment were in all events to be regarded as a general money judgment, with all the incidents thereof including the fixing of a judgment lien upon the debtor's real estate, it would not have been necessary for the Legislature to have empowered the court to require security, and to have provided specific means for the enforcement of the judgment. Instead of permitting the judgment to rest within the purview and protection of the general statutes, however, the Legislature made other provisions for the enforcement of the court's award. It authorized the court to order the husband to give security for both alimony and maintenance; to award an execution upon the husband's neglect or default in giving such security; and to enforce the performance of its judgment by sequestration of property (which means a setting apart of specific property so that it may be subject to execution. Watts v. Watts, 304 Mo. 361, 263 S. W. 421), or by such other lawful ways and means as is according to the practice of the court.

We repeat that the case law of our jurisdiction impels us to hold that the judgment under review was subject to the incidents of other money judgments, except to the extent that specific statutes may have provided otherwise, either by direct expression, or by necessary implication. Now it cannot be contended that section 1355, Revised Statutes 1929, creates any exception by direct expression as does the succeeding section in the case of judgments purely for alimony. But we do think that in providing specific means for the enforcement of the award, it does create an exception by necessary implication. Consequently, in view of the legislative purpose and intent expressed in the divorce statutes by which a greater power is given to the court than would follow from the mere right to adjudge a lien to exist, we are brought to the conclusion that a lien does not follow the entry of a judgment for the maintenance of minor children, payable in future, periodical installments, and subject to be increased, diminished, or defeated altogether as changed conditions of the parties may from time to time require. Rather the lien follows an execution for the collection of accrued installments, when a vested right has attached thereto.

It follows, therefore, that the judgment of the court on the first count of the petition was proper.

As to the judgment rendered by the court upon the second count, which stated a cause of action in ejectment, defendant Barbara Pinska argues that the same was erroneous, in that the action was properly triable before a jury. There is no doubt that it was, un-

less a jury was waived so as to make it triable before the court sitting as a jury.

The record shows no express waiver at the opening of the 'trial, as is usual in such instances, but for some reason the parties nevertheless elected to try the whole case before the court alone, though there is no pretense that the second count had in any manner been converted into a cause of action calling for equitable relief. However, the right to a jury trial may be waived by failing to request it, or by not objecting to the court's trying the action without a jury. [Nelson v. Betts, 21 Mo. App. 219; Bank of Monett v. Howell, 79 Mo. App. 318.] Here, counsel for the complaining defendant participated in the trial of the ejectment suit by interposing objections to plaintiff's direct examination, by cross-examining the plaintiff, by making certain admissions, and by stating, at the close of plaintiff's case, that he had no evidence to offer upon such count, all without any objection that a jury had not been called. This was in itself a waiver of the right to have the issues tried before a jury. But beyond this, the judgment of the court shows that the parties appeared, either in person or by attorney, and that the cause was submitted to the court upon the pleadings, evidence, and proof adduced. It is held that such a record entry sufficiently indicates that trial by jury was waived. [Bruner v. Marcum, 50 Mo. 405.]

It follows that the judgment rendered by the circuit court should be affirmed, and the commissioner so recommends.

· PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.