The State ex rel. Howell County v. Findley.

THE STATE *ex rel.* HOWELL COUNTY, *Appellant*, v. FINDLEY *et al.*

1.  **Collector's Bond:** SURETY: ERASURE OF NAME. The erasure from a county collector's bond of the signature of a solvent surety (who was one of the judges of the county court, the bond being refused approval for that reason) made either by the clerk of the court or by the collector in the presence of some of the judges releases other sureties who signed after the one whose name is erased and did not consent to the alteration, and this is the case although the bond was approved with a new signature opposite the same seal and in the same place.

2.  ——: ——: ——. The sureties who signed after the erasure and did not consent thereto were wholly discharged and not to the extent only to which they could otherwise have compelled contribution.

The State ex rel. Howell County v. Findley.

3. **Official Bonds:** STATUTES FORBIDDING NAMES OF JUDGES AS SURETIES. Statutes forbidding county courts from accepting an official bond with the name of a judge of the court as a surety thereon are regarded as directory merely, and as not designed to avoid the bond where the statute has been disregarded.

4. **Surety:** ALTERATION OF CONTRACT: ESTOPPEL. To raise an estoppel against a surety discharged by an alteration of the bond the burden is on the obligee to prove that the former waived or ratified the alteration.

*Appeal from Texas Circuit Court.*—HON. C. C. BLAND, Judge.

AFFIRMED.

*L. B. Woodside* and *Livingston & Pitts* for appellant.

(1) The court erred in sustaining the demurrer to the evidence. (2) The change in the bond was not made by the county court, nor by its direction, and this case does not fall within the general rule governing alteration of written instruments. *First.* An agreement between the principal and surety that the bond shall not be delivered unless another person shall be bound as cosurety will not relieve the surety from liability on the bond, and no agreement between them will affect the surety's liability unless known to the obligee. *State to use v. Potter,* 63 Mo. 212; *State ex rel. v. Modrel,* 69 Mo. 152; *Wolfe v. Schaeffer,* 4 Mo. App. 367. *Second.* The surety will not be discharged from liability by the fact that the name of a cosurety, on the faith of which his signature was procured, was a forgery. *State ex rel. v. Baker,* 64 Mo. 167; *State ex rel. v. Hewitt,* 72 Mo. 603. *Third.* The rule laid down by the supreme court of Arkansas, in *State v. Churchill,* 3 S. W. Rep. 352, is not in harmony with the cases above cited, is not founded upon good reason, and should not, in our judgment, be followed in this state.

VOL. 101—24

*Fourth.* When the defendants executed the bond and placed it in the hands of the principal for completion and delivery, they thereby made the principal their agent, and it was their duty to see that the bond was filed in accordance with their agreement, if any, as to who should be sureties thereon. *Carroll v. Ruggles,* 69 Iowa, 269. *Fifth.* The court ought not to be required to compel the attendance of sureties to an official bond to ascertain whether their names are affixed with conditions, or whether it is presented as the sureties understood it would be. *Sixth.* An erasure or change in the bond after approval would be a mere spoliation and no defense to an action. *Harrison v. Turbiville,* 2 Hump. (Tenn.) 242. *Seventh.* If the change is made before approval it will be presumed to have been done by the consent of all parties thereto, and unless the body charged with the approval and acceptance of the bond have actual notice that an alteration had been made, and that, without the consent of the sureties, it cannot be urged as a defense to an action on the bond. *State v. Potter,* 63 Mo. 212; *State v. Baker,* 64 Mo. 167; *Carroll v. Ruggles,* 69 Iowa, 269; *School Trustees v. Shirk,* 119 Ill. 589; *Huntingdon v. Finck,* 11 Conn. 531. (3) Gully was a member of the county court at the time he signed the bond, which fact was known to the defendants and he was forbidden by law to become a surety on any official bond. R. S. 1879, sec. 3917. (4) If the erasure of Gully's name from the bond affected the liability of the defendants in any way it should only go to the extent of discharging them from the *pro rata* share for which Gully would have been liable. *Dodd v. Winn,* 27 Mo. 501; *State v. Atherton,* 40 Mo. 209.

*J. H. Maxey* for respondents.

RAY, C. J.—This action was begun in the circuit court of Howell county, Missouri, but the venue was changed to Texas county, where the case was tried.

The suit is against defendant Samuel Findley on his official bond, as collector of the revenues of Howell county for the years 1883 and 1884, and against defendants, Reid and Summers, as sureties on said bond. The defense of the sureties is *non est factum.* The court, at the close of the evidence, in plaintiff's behalf, gave the instruction in the nature of a demurrer to the evidence, and entered judgment in favor of said sureties Reid and Summers. The material facts, necessary to be set out in the first instance, are about as follows:

At the March term, 1883, of the county court of Howell county the bond of the collector was produced and approval thereof asked, but the county court refused to approve the same, because one of the sureties therein, viz.: P. W. Gully, was a member of the county court, and then present when the bond was offered. R. S. 1879, sec. 3917. The presiding judge handed the bond back to the collector, telling him to get another name in place of Judge Gully's. Mr. Findley, the collector, says that Judge DRYER first scratched the name of Gully from the bond, and that the county clerk then scratched it over. But it seems, from the other evidence, that the clerk of said court, or the principal in the bond, one or both, scratched the name of Gully from the bond, the judges, or some of them, being present in the clerk's office at the time, and, thereupon, one M. A. Cooper signed his name in the place, or places, where said Gully's name had formerly been on the bond. The bond, so altered, was offered in court on the next morning with Gully's name off and Cooper's name inserted opposite the same seal and in the same place, and the court thereupon approved the bond.

The evidence further is that said Gully was solvent when his name was erased, and at the date of the trial and that said sureties, Reid and Summers, were not present in the county court upon either of said

days, and that the insertion of Cooper's name, and the erasure of Gully's (whose name was on the bond when signed by Reid and Summers), was without their knowledge or consent in point of fact. This statement of facts will suffice for the present.

Since the briefs of counsel have been prepared and filed in this case, we have had occasion in the case of *State v. McGonigle, ante,* p. 353, to examine the principal points, and authorities relied on, in the case at bar. S. W. Rep., June 16, 1890, 758. We content ourselves with a reference, in this behalf, to the discussion there had, both as to the principal questions now raised, and the purport and bearing of these leading cases, to which we are again cited in the able and interesting briefs before us. The *McGonigle case, supra,* and the present one are very much alike, in important features. In both cases, the name of a solvent surety was erased from the bond, and the name of another substituted in lieu thereof, upon the direction of the judges, but without the knowledge or consent of the defendant sureties. In the *McGonigle case,* the name of the surety Dailing was, upon his own motion, erased by the clerk in the presence of the judges and the collector, or principal in the bond, but, as stated, without the knowledge or consent of the cosureties. In one or two days afterwards, Reid, the principal, again presented the bond to the court for approval with the name of one Cain assigned to the line and at the place from which Dailing's name had been erased, and the court then approved the bond.

We have already stated the facts in this behalf in the case now up for decision. In both cases the alteration in the bond and action of the court in the premises was the same, though taken upon different grounds. This case, upon the facts so far as found and stated, clearly falls within the rule laid down in our said former decision. The judges of the county court, it is true, ought not to have accepted one of their number

The State ex rel. Howell County v. Findley.

as a surety on the official bond of the collector, as the statute forbids them from so doing, but statutes of this sort are regarded as directory merely, and as not designed to avoid the bonds where the statute has been disregarded. *Hicks v. Chouteau*, 12 Mo. 341; *Wallace v. Scoles*, 6 Ohio, 429; *Sherman v. State*, 4 Kan. 570; *Kohn v. Washer*, 6 S. W. Rep. 551; *Hollandsworth v. Commonwealth*, 11 Bush. (Ky.) 617. Nor ought the judges in *McGonigle's case* to have accepted said Dailing as a surety after he disclosed the conditions under which he signed, and demanded his release before the delivery of the bond. The action of the judges was so far lawful and proper in both cases. It is their action upon the bond when presented the second time, in approving the same, with full knowledge that the alteration and erasure in the bond had been made without the knowledge or consent of the sureties, that operates to discharge them.

In this case, as in that, it is claimed that the defendant sureties by executing the bond and placing it in the hands of the principal to get other names and to deliver the bond thereby made him their agent, and are bound by his acts. The discussion of this point in the *McGonigle case* covers the same point in this case, and need not be repeated. The learned counsel will see that the decision there meets most of the questions raised by them in this behalf, involving the rights of parties growing out of alterations and erasures of instruments of this sort.

A point not passed upon, or raised in that case, is raised in this case, in effect, that the erasure of Gully's name, at most, only operated to discharge these sureties to the extent of the *pro rata* share for which Gully would have been liable. But the surety stands, and has a right to stand, upon the exact terms of his contract, and a material alteration of this sort makes the bond void as to him. It substitutes a new contract which

releases him *in toto*.  See authorities cited, examined and discussed in *State v. McGonigle*.  It is held, in some cases it is true, that a surety may be discharged by the beneficiary in the obligation, and that the cosureties will be thereby discharged only to the extent of his *pro rata* share, but this doctrine is based upon the statute pertaining to sureties and applies to discharges given after the obligation is delivered and accepted.  It is, we think, inapplicable to cases of this sort.

One other question remains to be considered, and that is as to the waiver, ratification or estoppel, claimed to be shown by the subsequent acts and declarations of the sureties.  It is claimed that the conversations of these sureties with Cooper, Dryer and Gully at different times afford some evidence that defendants were aware of the erasure and change in the bond.  For example, Cooper says that they said to him at the time of the first settlement, "You are on Findley's bond."  Cooper, it will be remembered, is the surety who took the place of Judge Gully in the bond in question.  Now, the order of signatures on the bond shows that one of the sureties, viz., Jennings, signed the same after Reid and Summers did.  There is, we apprehend, nothing in their mere knowledge that Cooper had afterwards signed, tending to show that they knew Gully's name had been erased and Cooper's substituted.  Besides Cooper testifies that, while he told Summers in the first year of the collector's term that he was on the bond, he did not tell him that Gully's name had been erased, and that the first time he ever heard Reid or Summers say anything about Gully's name not being on the bond was about the "general burst up" in March or April, 1885.  Nor do we see that the mere failure of defendants to consult Gully about protecting themselves is, in itself, entitled to the weight counsel give it.  Beside this, Gully testifies that on one occasion they spoke to him about strengthening the bond.

Again, counsel claim that the knowledge of the erasure of Gully's name is shown by the evidence of Dryer that during the first year of Findley's term defendants Reid and Summers said to him that they were "the only men on the bond worth a damn."

Counsel claim, with some force, that as Gully was solvent, and alleged to be so in the answer, defendants would not have said this if they thought Gully was on the bond. Defendants, however, as other evidence shows, were then anxious, as well as afterwards, about their liability on the bond, and contemplating steps to protect themselves in the matter. It may be, if we are at liberty to conjecture, that they thought the position of Gully—as judge of the county court—precluded him from being of service to them in their contemplated action. There is evidence that Reid and Summers were both active in trying to get a meeting of the securities with a view to action in the county court in respect to the bond, in which efforts they had not been successful, and counsel for defendant claim that the remark was made in that connection, and not in respect to the solvency of the security. This view is, perhaps, somewhat unfavorably affected by a want of certainty and accuracy as to the dates of these negotiations and efforts to secure the co-operation of the securities in said matter. Whatever force there may be in either or both these views arises largely by way of argument. At most, these several matters, out of which the parties draw their respective inferences and arguments, are to be considered along with the direct evidence, and other facts and circumstances. No one testifies in the case that he informed either of these defendants of the erasure prior to the spring of 1885, or that either of them stated prior to said date to any body that they knew of said erasure. There is no doubt that defendants acted on some occasions as if they thought themselves liable, and may have said, or implied, as much at

various times.   But this conduct and admissions, if any, are in themselves entirely consistent with their ignorance of the erasure.

There seems to be no evidence that the question as to Gully's being on or off the bond was ever raised or discussed until at or about the time of the excitement growing out of reports that the collector was behind to a large amount.   Omissions, in several instances, to have the witnesses state dates with certainty, or to put down in the record their statement as to dates, if any, is somewhat confusing, but the "general burst up," as it is sometimes spoken of, and excitement incident thereto, seems to have been in the spring of 1885. About that time several parties seemed to have mentioned the list of names on the bond to these defendants, and upon each occasion they expressed surprise that Gully's name was not there, and more than once declared that if Gully's name was not on the bond neither was theirs, as he had signed before they did.

Cooper, introduced by plaintiff, testifies as stated already, that he first heard Reid and Summers speak about Gully's name not being on the bond, about the general burst up, and first heard them complain about Gully's name not being on the bond in March or April, 1885.

Again, C. T. Bolin says that after he heard the collector was behind some eight thousand or ten thousand dollars he went to the clerk's office to see if he was on the bond, and that meeting Reid afterwards on the same day he called over the names on the bond and that as it did not seem satisfactory to Reid he went and got the list, and that when he came with it Summers was also present, and that they both claimed that Gully's name was on the bond, and that he told them it was not.

Again, the collector testifies that, six weeks or two months before the final settlement, Reid and Summers,

and may be others, went with him to the office to see the bond and that some of them said this is not the bond they signed ; if it was, Gully's name had been scratched off after they signed it.

Again, Maxey testifies that, shortly before the suit was brought on the bond, he discovered the erasure, and that he showed the bond to defendants and that they examined it with a spy-glass. Cooper says he told them then that Gully's name was erased, and that when Maxey looked at the bond with a spy-glass he said Cooper was right about it. Beyond this, there is nothing in the testimony pertinent to the question under review. The plaintiff in insisting upon the waiver or ratification has the burden of proof. It is often said that the words or acts relied on as amounting to a ratification must be affirmative in character and sufficient to amount to the making of a new contract. *State v. Churchill,* 3 S. W. Rep. 352 ; *Winsor v. Bank,* 18 Mo. App. 665 ; *Middleton v. Railroad,* 62 Mo. 579 ; *German Bank v. Dunn,* 62 Mo. 79 ; *Cravens v. Gillilan,* 63 Mo. 28 ; *Miller v. Gilleland,* 19 Pa. 199 ; *Evans v. Foreman,* 60 Mo. 449.

Under a liberal interpretation of the evidence, and one most favorable to plaintiff's case, it manifestly fails to meet the requirements of the rule just mentioned. As was said in *State v. McGonigle, supra,* an estoppel cannot arise against the defendants until it is shown that they knew of the alteration and thereafter made no objection to the performance by the collector of the official duties, by virtue of having given the bond in question. Plaintiff's evidence, we think, fails to make out a case of this sort, and we, therefore, affirm the judgment, and so order, in which BLACK and BRACE, JJ., concur ; SHERWOOD, J., dissents ; BARCLAY, J., absent.