# LATTIE PHILLIPS et al., Appellants, v. DOVIE WILSON et al.

### Division One, April 6, 1923.

1. **APPELLATE PRACTICE: Action at Law: No Instructions: Substantial Evidence.** A suit in ejectment, no equitable features being alleged in either the petition or answer, is an action at law, and the issues being strictly legal the appellate court is bound by the finding of facts made by the trial court sitting as a jury, and cannot consider the evidence *de novo;* and being an action at law, and no instructions having been asked or given, the judgment must be affirmed if there is any substantial evidence to support it.

2. ———: ———: **Evidence Considered.** In determining whether there was substantial evidence to support the general finding of the trial court, sitting as a jury in an action at law, just as in considering the verdict of a jury, the appellate court can only consider the evidence of the respondents, and the verbal evidence of appellants admitted to be true, and their undisputed record evidence; and the weight and credibility of appellants' evidence was for the trial court.

3. **MARRIAGE: Without Divorce: Voidable: Legitimacy of Children.** Although a marriage may be unlawful, because the man had a living wife at the time, from whom he was not divorced, if the woman married in good faith believing that death or divorce had removed all obstacles to the marriage, such marriage is deemed voidable only, and not void, and the children of such marriage are legitimate, and may inherit, as legal heirs, from their parents.

4. ———: ———: **Belief That Man Had Been Divorced: Evidence.** Testimony by the woman, at the time an ignorant country girl eighteen years of age, that the man, aged forty-seven, whose former wife was her aunt and whom she knew to be living, but who had separated from him, assured her that he was "loose" from his said former wife and was free to enter into common-law marriage with her, and that she believed his statements and agreed to marry him upon such assurance, is in effect testimony that she believed that divorce had dissolved his former marriage, and that he was free to marry her; and being a respondent in this action at law, her testimony must be assumed to be true, and therefore it must be ruled that she acted in good faith, and that her children by him during their subsequent marital relations are legitimate.

Phillips v. Wilson.

5. ———: **Presumption of Divorce.** In the absence of testimony to the contrary, the law presumes from the fact that a man and woman entered into the marriage relation and for a long period of time publicly continued therein that he had been divorced from his former wife before such relation began, and the burden is upon those asserting the contrary to prove, by clear and satisfactory evidence, that there was no such divorce.

6. ———: ———: **Consideration of Contrary Evidence.** On appeal from a judgment in an action at law, in which no instructions were asked or given, appellants' verbal testimony tending to prove that there had been no divorce of respondent's husband from a fromer wife, prior to his marriage to her, cannot be considered, but only the testimony of respondents will be considered, which, in this case, standing alone, shows a valid common-law marriage by reason of the woman's belief that he had been divorced from his former wife and her entrance in good faith into marital relations with him and the continuous uniform claim and repute of one another as husband and wife.

7. ———: ———. **Subsequent Marriage of First Wife: Affidavit.** A ceremonial marriage of the man's former wife, two years after she and he had separated, raises a strong presumption that she was at the time divorced from him, and is substantial evidence to support a finding that there was a valid common-law marriage between him and respondent; and an affidavit attached to the marriage certificate of said former wife with her second husband to the effect that she was then single and unmarried, even if not otherwise competent, not being objected to in the appellate court, is material evidence of said fact.

8. ———: ———: **Remarriage: Dower: Incompetent Evidence on Appeal.** Both the man and his first wife having married other spouses and the presumption being that their marriage was dissolved by divorce, the burden is on her, in her claim for dower in his real estate, to show either that there was no divorce or a divorce in her favor.

Appeal from Butler Circuit Court.—*Hon. Almon Ing,* Judge.

AFFIRMED.

*Gregory & Holtzendorff, Cope & Tedrick* and *E. G. Hammons* for appellants.

(1) Respondents were permitted to introduce in evidence, over objection of appellants, an "order" refusing letters of administration and a "note and deed of trust" signed by Warren Wilson and Dovie Wilson. This was objectionable. These instruments did not tend to prove or disprove any of the issues in the case. (2) The court erred in rendering judgment for the respondents, and also in overruling appellants' motion in arrest of judgment. The questions of law that present themselves are (a) the validity of the so-called common-law marriage, (b) the status of the children of Warren Wilson and Dovie Wilson with reference to legitimacy, and (c) the right of Mrs. Lattie Phillips, the true widow of Warren Wilson, to participate in the distribution of decedent's estate. (a) The evidence conclusively shows there was never any marriage contract entered into between Warren Wilson and Samanthia Johnson, common law or otherwise. Warren Wilson never at any time obtained a divorce from Lattie Wilson nor she from him, and he was, therefore, incompetent to enter into a marriage contract. This fact was well known to both parties at the time they began living together, and their cohabitation cannot be construed to be a marriage for any purpose whatsoever. Cargile v. Wood, 63 Mo. 501; Payne v. Dotson, 81 Mo. 145; Hanz v. Sealy, 6 Binn. 405; Keen v. Keen, 184 Mo. 359; Topper v. Perry, 197 Mo. 531; Perkins v. Silverman, 223 S. W. 895. (b) The children born as a result of this illicit cohabitation are illegitimate. Their parents were never married, but merely lived together in adultery. Where one or both of the parties to the marriage contract acted in good faith the children are legitimate, notwithstanding the fact that there was no valid marriage. This is not true here. Both parties were aware of the fact that Warren Wilson had a wife living, from whom he had never been divorced and their subsequent cohabitation, in the face of this knowledge, was nothing more or less than adultery, and the children born as a result of this adulterous relation are bastards. Green v. Green, 126 Mo. 17; Nelson v. Jones, 245 Mo. 579; Stripe v. Meffert, 229 S. W. 762; Sec. 341, R. S. 1909. (c) War-

ren Wilson's true widow, Lattie Phillips, is entitled to her dower interest in his estate.  No divorce was granted to either of them and their separation was not voluntary on her part.  The fact that two years after their separation she married and lived with John Phillips is not such an act as to constitute ''a going away and continuing with an adulterer,'' within the meaning of Sec. 365, R. S. 1909.  Payne v. Dotson, 81 Mo. 145; Shaffer v. Richardson, 27 Ind. 122; Hoyt v. Davis, 21 Mo. App. 235; Coggswell v. Tibbetts, 3 N. H. 41; Sec. 365, R. S. 1909.

*Henson & Woody* for respondents.

(1) Where a marriage is contracted between a man and a woman, either ceremonial or common law, the presumption obtains that their conduct was in conformity to law, until the contrary is shown, and the burden is on the person asserting the contrary.  Maier v. Brock, 222 Mo. 74; Jackson v. Phalen, 237 Mo. 142; Nelson v. Jones, 245 Mo. 579; Murray v. Scully, 259 Mo. 57; Johnson v. Railroad, 203 Mo. 381.  (2)  To constitute a common-law marriage there must be (a) a man and a woman competent to contract, (b) they must enter into a contract by which they assume the relation of husband and wife for their joint lives, (c) there must be a consummation of the contract by cohabitation, and (d) they must be reputed generally to be husband and wife.  Perkins v. Silverman, 284 Mo. 238; Bishop v. Inv. Co., 229 Mo. 699; Topper v. Perry, 197 Mo. 531; Cargile v. Woods, 63 Mo. 501; Elzas v. Elzas, 171 Ill. 632; Plattner v. Plattner, 116 Mo. App. 405; Davis v. Stouffer, 132 Mo. App. 555.  (3) The note and deed of trust executed by Warren Wilson and Dovie Wilson, as also the order of the Probate Court of Butler County denying letters of administration on the estate of Warren Wilson, were competent as proving the marriage between these parties.  Bishop v. Inv. Co., 229 Mo. 699; Topper v. Perry, 197 Mo. 531; Plattner v. Plattner, 116 Mo. App. 405.  (4) This being an action at law, the finding of the trial court, sitting as a jury, is binding upon this court,

if supported by substantial evidence. Keen v. Keen, 184 Mo. 358; Topper v. Perry, 197 Mo. 531; Matthis v. Melton, 238 S. W. 806; Hunter v. Moore, 202 S. W. 544.

SMALL, C.—Ejectment for 171½ acres of land in Butler County.

Answer, a general denial, except admission that defendants are in possession. Further answering, defendants state that they and the plaintiff Luella Williams are the owners in fee simple, subject to the dower interest of defendant Dovie Wilson, of said property. That plaintiffs Lattie Phillips and J. F. Holtzendorff claim adversely, but have no rights in said property; wherefore, defendants pray the court to determine and quiet title between the parties, according to the statute in such cases made and provided.

The case was tried before the court without a jury. No instructions were asked or given. The court found a verdict and rendered judgment, that defendants and plaintiff Luella Williams were the owners of the property, as claimed by defendants, and the other plaintiffs had no interest therein.

Plaintiffs duly appealed to this court.

The evidence showed that both parties claimed through Warren Wilson, as a common source of title. He acquired ownership by deed dated March 27, 1902, and recorded March 11, 1904.

Plaintiffs' evidence tended to show that Warren Wilson moved onto said farm in October, 1902. That he was accompanied by the defendant Dovie Wilson, who lived with him as his wife. That they lived together as husband and wife, and always claimed, privately and publicly, to be husband and wife, and were so reputed generally in said community, from the time they moved there in 1902, until the time of his death in 1915. That when they moved to said farm they had no children, but afterwards five children were born to them, the oldest of whom was eighteen years old at the time of the trial, and the youngest eight years, the oldest being married to Henry

Wisecarver. The children were all born and raised on this farm, and all of them, except the married one, lived with their mother on the farm at the time of the trial. No one in the neighborhood, until this suit was instituted, ever questioned that they were man and wife, and always referred to and treated them as such.

The plaintiff Lattie Phillips testified for plaintiffs, and it was admitted by defendants, that she was married to Warren Wilson in 1895 in Prairie County, Arkansas. That the plaintiff Luella Williams was her daughter, and the daughter of Warren Wilson, as the fruit of that marriage. Said Lattie Phillips then testified: She and her husband, Warren Wilson, lived in Prairie County, Arkansas, and separated in 1902, when Wilson went to Missouri. The separation took place in June, 1902. Before the separation, Wilson sold all the livestock and personal property he had on the farm; he also took all the household goods, except a sewing-machine, cookstove and some old chairs, which the witness received. He also gave her ten dollars in money, and she went back to reside at her mother's home in said county. Wilson realized about nine hundred dollars from the property he sold. Wilson left their home in Arkansas with Samanthia Johnson (defendant, Dovie Wilson). ''She is my niece, and I have known her ever since she was a little baby. She has visited with us, but never lived with us. She was at our home when my husband and I separated, and was still there when I came back after my things. There was familiarity between her and my husband before our separation. They were all the time together, off to themselves, always with one another, they were out with eachother. I was away about a week. I was at Little Rock, during the first part of June, staying with my mother; some one stayed with him. She was at my home when I went to my mother's, and they stayed there alone until they left in the fall. She was also there when I got back from my mother's, although she did not say she was there during my absence. I was never divorced from Warren Wilson, nor was I ever served with process incidental to

his getting a divorce. I never knew or heard of him getting a divorce. We had four children, Three of them died in infancy."

On cross-examination, the witness testified: "I was married to J. G. Phillips by a man named Sanders, who was a justice of the peace in Prairie County, Arkansas, in 1904, and have lived with him as his wife ever since. We have lived in Prairie County, Arkansas, in the same county where Warren Wilson and I lived, since 1904. Warren Wilson and I agreed to separate in May, 1902. I went to my mother's at Little Rock to wait on her. I came back and then left again in June. She [defendant, Dovie Wilson] came to our house in February on a visit, and when I went to wait on my mother she stayed there until I came back. The day he took me to the railroad station, he told me that he didn't intend to live with me any more, and I went to my mother's in Little Rock, as I had no other place to go. He lived there at the same place, where we had both lived, after I had gone to live with my mother. That was in the spring of 1902. He left early in that fall, and I only saw him twice before he left. I went there to get what he was to let me have, which was one time, and Samanthia was there with him; and the next time I saw him was just a little while before they left and moved up here. He at that time tried to get my cookstove. A few years ago he came back to Arkansas after some tools and other things I had taken to my mother's with me through mistake. He came back after the box of tools, and told me where to send the rest of the stuff, which I shipped to him to Williamsville, Missouri, where he told me. After our separation, when I went back, the defendant, Dovie Wilson, and he were living together, no one else living there with them. Warren Wilson came back on a visit a year or two before he died, and I saw him then. My daughter was married, she was at my house, and he came to see her. He said nothing about his Missouri home. All I knew about his living in Missouri with Dovie Wilson was what her brother told me. She wrote to her brother all the time. He

wrote to her as Samanthia Wilson. I knew nothing of
her and Warren Wilson having a family of children, ex-
cept that I saw a picture of her and her five children,
which she sent to her brother.''

The deposition of F. L. Grady was taken and read
on behalf of the plaintiffs. He testified: That he was
County Clerk of Prairie County, Arkansas, and had
charge of the marriage records of that county. That such
records contain a marriage license of J. Warren Wilson
to Lattie Raper. That exhibit ''A'' attached to his dep-
osition, is a certified copy of that record. Said exhibit
''A'' contained copies of four separate documents, to-
wit: 1st, a marriage affidavit; 2nd, a bond for marriage
license; 3rd, a marriage license; and 4th, a certificate
of marriage. They showed that on the 8th of September,
1895, there was a ceremonial marriage before a justice of
the peace of Prairie County, Arkansas, between J. War-
ren Wilson, age forty years, and Miss Lattie Raper, age
twenty-six years.

The deposition of G. C. Stock was read by plaintiffs.
He testified: That he was chief deputy clerk of the cir-
cuit and chancery courts of Prairie County, Arkansas,
and as such had charge of the records of said courts.
That he examined the divorce records of said courts,
going back over a period of thirty years, and found that
no suit was ever instituted for a divorce by Warren Wil-
son against Lattie Wilson, or by Lattie Wilson against
Warren Wilson, and no decree of divorce ever entered,
for or against either of said parties, according to the
records of said courts. That the chancery court was the
court which had jurisdiction in divorce cases.

Several other witnesses, relatives of the parties, tes-
tified for plaintiffs: That Warren Wilson and Samanthia
Johnson lived a short time together at Wilson's former
home in Arkansas, and then left together.

Allye Macom testified for plaintiffs: ''I am deputy
circuit clerk of this county (Butler County, Missouri),
and as such have charge of the divorce records of the
county. I have made an examination of such records

from 1902 to the present time, and find no record of divorce having been granted to Warren Wilson from Lattie Wilson." Defendants here admitted that there was no record in said Butler County of any marriage between Samanthia Johnson or Dovie Johnson and Warren Wilson.

Defendants, to sustain the issues on their part, offered in evidence a certified copy of the marriage certificate of J. G. Phillips and Lattie Wilson, certified by the county and probate clerk of Prairie County, Arkansas, under his hand and official seal. This certificate contained four documents: 1st, an affidavit; 2nd, a bond for marriage license; 3rd, a marriage license; and 4th, a certificate of marriage. It showed a ceremonial marriage before a justice of the peace of Prairie County, Arkansas, on the 11th day of September, 1904, between J. G. Phillips, age fifty, and Mrs. Lattie Wilson, age thirty-eight. The "affidavit of marriage" was as follows:

"CERTIFICATE OF MARRIAGE.

"State of Arkansas, ⎤
"County of Prairie, ⎬ ss.
"Southern District. ⎦

"In the office of the Clerk of the County Court of said County.

"Marion Floyd, of the County of Prairie and State of Arkansas, being duly sworn, deposes and says that J. G. Phillips, who has this day applied to me for License of Marriage, and that he has arrived at the age of 50 years and that Lattie Wilson has arrived at the age of 38 years; that they, the parties for whom said application is made, are now single and unmarried, and may lawfully contract and be joined in marrige.

"MARION FLOYD.

"Sworn to and subscribed before me this 10th day of Sept. A. D. 1904.

"EMMET VAUGHN,
"Clerk County Court.
"By JNO. I. BOOE, D. C.

"Filed 10th day of Sept., 1904. Recorded 10th day of Sept., 1904.

EMMET VAUGHN, Clerk.

"By JNO. I. BOOE, D. C."

Defendant, Dovie Wilson, testified: "I live in Butler County, Missouri, near Upalika, on the farm owned by Warren Wilson. I live with my children, which are also the children of Warren Wilson. There are only four of them living with me now, as one of them is married and lives with her husband. Warren Wilson died January 25, 1915. Warren Wilson and his former wife separated in April, 1902, and I begun living with him as his wife the first of June, 1902. At the time we begun living together, he and his first wife were living separate and apart. Warren Wilson never made love to me before he and his former wife separated. Neither were there any intimate relations between us. We did have an agreement to live together as man and wife, so long as we both lived. We made the agreement in June, 1902, and lived together from that time until he died. We occupied the same bed, lived in the same house, and raised a family of five children. I was eighteen years of age at the time of our agreement and knew nothing of legal procedure. I was raised in Prairie County, Arkansas. He told me it was all right, that he was loose from his other wife, and this would be a good common-law marriage, and that it would hold good. I don't know whether he ever got a divorce from his former wife or not. I do not know where he was all the time after they separated, and before we settled down and came up here. I don't know where he went to, when he first came to Missouri, as I was not with him. Warren Wilson died on the farm where the children and I were living. They had lived with me ever since my husband died, and none of them knew, until this case came up, but what Warren Wilson and I were married by an officer authorized to perform a marriage ceremony and with a regular license."

On cross-examination, she testified: "My name in Prairie County, Arkansas, was Dovie Samanthia John-

son. My husband called me Dovie, as I didn't want him to call me Samanthia. We made our agreement in June along toward the first of the month, at his house in Prairie County, Arkansas. Wilson's wife was not there when we made the agreement. She had not been there since April, since they separated. I was at their house before they separated, but stayed only two or three weeks. I stayed there and kept house during the busy part of the crop time, and then went to my father's sister's and stayed there I don't remember how long. I left Mrs. Mc-Mullin's place and went back with Warren Wilson to where he lived. I stayed there a week, and his wife came home and stayed a week or two, then she went away and left again and left me there. I was there about three weeks, while Mrs. Wilson was away, and about two weeks while she was there. After I left there, I went to Hazen and lived with Mrs. Pinkerton, my father's sister; I stayed there about two weeks, and then went back to Warren Wilson's home. He came after me about the first of June and I went with him. We agreed to become husband and wife on the day we went back. We did not begin to occupy the same bed until three or four days after the agreement. The reason I went back with Warren Wilson was to get my things; they were not packed, so I had to go after them. Warren Wilson first began to make love to me in June, and when I returned after my things, we agreed to become man and wife. He did not make love to me until after I went back after my things. He began to talk about it the same day that we went back, and in two or three days we made our agreement and began living together as man and wife. I do not know where Mrs. Wilson was at that time, but she was not there with us. I lived there in the Surrounded Hill country with Warren Wilson, just the two of us, in the same house, and occupying the same bed from June until October. He called me his wife then, and claimed me as his wife. I am Mrs. Phillips' niece and had visited her and Warren Wilson on occasions before. I knew they had been married, and had been living together, and I knew

they had only been separated two or three months. But in spite of that, I permitted him to make love to me and then become his wife and occupied the same bed with him. There never was any ceremony, but I felt that it was all right, because he told me it was. I did not insist on any ceremony, for I believed what he told me. He told me that he was loose from this woman, and that we could make an agreement, which was a common-law marriage, and that it would be good. He left there sometime in May, but I don't remember how long he was gone. I was in Hazen at the time. It was along between the middle and last of May. I don't think he could have been gone more than a week or two. I didn't know about him being up here in Missouri in March of that year until after we made our agreement. We moved to Missouri and landed here on the 25th day of October. We left nine days before and came through by land. I visited Mr. Wilson's family in January and February, before we agreed to have this marriage in June. I stayed there from the first of January until the first of March or the last of February. I went back sometime in April, and was there a week or two after they separated. I have lived in Missouri ever since we moved here. Warren Wilson was never away from here for any great while at a time, and when he was gone I knew where he said he was going. He was in Arkansas three or four times, and would be gone a week or two weeks at a time. Sometimes he would write me from Arkansas. He never told me whether or not he had ever got a divorce.''

Plaintiffs then admitted that some eight or ten witnesses offered by defendants would testify, if placed upon the witness stand, that Warren Wilson and Dovie Wilson were known generally in the community in which they lived as husband and wife from the year 1902 until the time of Warren Wilson's death, and that they raised this family of five children and were living together at the time of the death of Wilson on this farm. It was also shown that on the 23rd of December, 1914, Warren Wilson and Dovie Wilson made a deed of trust on said

real estate, in which she was described as his wife, to secure their joint notes of $250. That she was also described in the acknowledgment as the wife of said Warren Wilson. This deed of trust was recorded on the 28th day of December, 1914. After the death of Warren Wilson, it was paid off by defendant Dovie Wilson, from the proceeds of the sale of some cattle on the farm.

I. The pleadings in this case are at law. No equitable features are alleged, either in the petition or the answer, and no equitable relief is prayed for. The issues, therefore, are strictly legal. And the case, having been tried by the court, sitting as a jury, we are bound by the decision of the court on the facts, and cannot consider the evidence in the case *de novo*. [Sawyer v. French, 290 Mo. l. c. 384-5, 235 S. W. 126; Bank v. Wilson, 222 S. W. (Mo.) 381.]

**Action at Law.**

II. This being a suit at law, and no instructions having been asked or given, the judgment below must be affirmed, if there is substantial evidence to support it. [Hunter v. Weil, 222 S. W. (Mo.) 472; First Natl. Bank v. Wilson, 222 S. W. (Mo.) 381; Railroad v. So. Ry. News Co., 151 Mo. l. c. 380-1; Sutter v. Raeder, 149 Mo. l. c. 307.]

**Review.**

III. In determining whether there is such substantial evidence, this court on appeal can only consider the evidence of the respondents, and verbal evidence of the plaintiffs admitted to be true, and the undisputed record evidence of the plaintiffs, because it was the province of the lower court, sitting as a jury, to pass upon the weight and credibility of the verbal testimony given by the witnesses for plaintiffs, and that court having found against them, we are concluded by that finding, the same as if the finding had been made by the verdict of a jury. [Sawyer v. French, 290 Mo. l. c. 388, 235 S. W. 126.]

**Credibility.**

IV.  Although a marriage may be unlawful, because either the man or the woman has another spouse living at the time of the marriage, from whom he or she was not divorced, still, if either one of them married in good faith, believing that death or divorce had removed all obstacle to their marriage, such marriage will be deemed voidable only, and not void, and the children of such a marriage are legitimate and may inherit, as legal heirs, the property of their parents. [Sec. 342, R. S. 1909; Stripe v. Meffert, 287 Mo. l. c. 388 et seq., 229 S. W. l. c. 769 et seq.; Green v. Green, 126 Mo. l. c. 22-4; Nelson v. Jones, 245 Mo. l. c. 596-7.]

*Voidable Marriage.*

V.  Is there any substantial evidence, in this case, that Dovie Wilson, at the time she says she entered into the common-law marriage with Warren Wilson, supposed or believed in good faith, that he was divorced from his former wife?  She says he told her that he was free or ''loose'' from his former wife, and could enter into a lawful common-law marriage with her, although he never told her that he was divorced from his former wife, or that she was divorced from him.  She was but an ignorant country girl at that time, about eighteen years old, and he was forty-seven years of age.  She says she believed that he was free to marry her, as he said he was; if so, assuming that she knew the law, she must have believed that divorce had separated him from his first wife, although he did not say so in so many words.  If this be true, which we must assume, she acted in good faith in entering into such marriage, and her children are legitimate. [Stripe v Meffert, supra; also, Nelson v. Jones, 245 Mo. 579, opinion by LAMM, J., where the facts were very similar to the facts before us.]

*Belief That Man Was Divorced.*

VI.  Furthermore, the law, in the absence of testimony to the contrary, presumes from the mere fact that Warren Wilson and Dovie Wilson entered into the mar-

riage relation, and so long and publicly continued therein,
that he was divorced from his previous spouse,
and the burden is upon those asserting the
contrary to prove there was no such divorce
by clear and satisfactory evidence. [Johnson v. Railways,
203 Mo. 381; Maier v. Brock, 222 Mo. 74; Nelson v.
Jones, 245 Mo. 591-2; Bishop v. Brittain Inv. Co., 229
Mo. 729.]

*Presumption of Divorce.*

But on this appeal, inasmuch as no instructions were
asked or given, we cannot consider appellants' verbal
evidence tending to prove there had been no divorce, but
we can only consider the testimony of respondents (Para-
graph 3, supra) which, standing alone, shows a valid
common-law marriage by reason of the long, continuous
cohabitation, and uniform claim and repute and holding
out of each other by Warren Wilson and Dovie Wilson as
husband and wife.   [Nelson v. Jones, supra.]

Besides, the affidavit attached to the marriage certif-
icate of Lattie Phillips with her second husband made in
1904 states that she was then single and unmarried. This
affidavit, even if not otherwise competent evidence, not
being objected to in this court, is to be considered as ma-
terial evidence of the facts therein stated on this appeal.
[Sawyer v. French, 290 Mo. l. c. 385-6 et seq.]

Indeed, the ceremonial marriage of Lattie Wilson
and J. G. Phillips in 1904, of itself, raises a very strong
presumption, that she was at that time divorced from
Wilson, her first husband.   [Maier v. Brock, 222 Mo. 74,
and other cases cited, supra.]

So that, there was substantial evidence to support
the finding of the lower court, that there was a valid com-
mon-law marriage between Warren Wilson and Dovie
Wilson, and that their children were legitimate.

VII.   Both Warren Wilson and his first wife, Lattie,
having remarried, and the presumption being that their
first marriage was dissolved by divorce, the burden is
upon her, when she claims dower in his estate, to show
either there was no divorce or a divorce in
her favor.  This, she has not done under the
only evidence we can consider in the record

*Remarriage: Dower.*

before us. [Maier v. Brock, 222 Mo. 74, and other cases, supra.] Therefore, she was properly denied all interest or dower in the farm in controversy.

Finding no reversible error in the judgment below, it is affirmed. *Lindsay, C.,* concurs; *Brown, C.,* not sitting. .

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur.