CITY OF BROOKFIELD v. WALTER McCOLLUM ET AL.; C. M. HOPPER ET AL., Appellants.

CITY OF BROOKFIELD v. WALTER McCOLLUM ET AL.; HARRY MARKHAM, Appellant.—5 S. W. (2d) 10.

Division Two, April 9, 1928.

*C. M. Kendrick, Harry. K. West* and *Paul Van Osdol* for appellants.

*W. J. Carlson* and *Thomas P. Burns* for respondent.

HENWOOD, C.—The city of Brookfield filed this suit, in the Circuit Court of Linn County, at Brookfield, against Walter McCollum, as principal, and C. M. Hopper, A. G. Rogers, W. S. Johnson, Peter Kiel, C. E. Hunter, W. H. Johnson, C. E. Hoagland, J. M. Turner, V. Q. Johnson, E. J. Faut, Edward Hubbard and Harry Markham, as sureties, on the official bond of McCollum, as city treasurer, in the sum of $50,000, alleging the breach of said bond, by reason of McCollum's failure to turn over to his successor in office certain city funds in the sum of $23,707.83, and seeking the recovery of said sum, together with interest from the date of demand. The venue was changed to the Circuit Court of Macon County, at Macon City, where the case was tried before the court, a jury being waived. The trial court found the issues for the plaintiff and rendered judgment against the defendants for $50,000, the full penalty of said bond, to be satisfied in full on the payment of $23,707.83, with interest thereon, at the rate of six per cent per annum, from January 12, 1925, the date of the filing of the petition. From that judgment all of the defendants appealed, except McCollum, eleven of the sureties joining in one appeal and the other surety, Harry Markham, taking a separate appeal. As indicated by the title of this cause, these separate appeals were consolidated, by stipulation of the parties, for presentation by briefs and argument in this court and for decision by this court.

The trial petition follows the usual form in cases of this character. Among other essentials, it alleges the execution, delivery and approval of McCollum's said official bond as city treasurer and said shortage in his accounts as such officer. The original separate answers of the sureties were in the form of general denials. After the first day of the trial and shortly before the plaintiff closed its case in chief, all of the sureties, except Harry Markham, joined in a separate amended answer, in which they set up the defense of *non est factum,* and specially pleaded a material alteration in the bond, after the execution of the same by them and prior to delivery, without their knowledge and consent and with the knowledge of the city and its officers and agents. The alteration complained of was the erasure of the signature of P. W. Markham or Percy Markham and the substitution of the signature of Harry Markham. At the same time, Harry Markham filed a separate amended answer, in which he pleaded the same defense, and his release from liability on said bond

as a consequence of the release of his co-sureties. It was agreed by counsel that the record should show, the filing of replies to these separate amended answers in the form of general denials.

McCollum was elected city treasurer of the city of Brookfield at the April election, 1924. He was required to give an official bond in the sum of $50,000, as security for the faithful performance of his duties and for the safe-keeping and prompt payment of all city funds as provided by law. His bond was first offered for approval on April 15, 1924, when the other newly elected officers were installed and the new council held its first meeting. The bond was then signed by McCollum, as principal, and C. J. Hopper, A. G. Rogers, W. S'. Johnson, Peter Kiel, C. E. Hunter, W. H. Johnson, C. E. Hoagland and P. W. or Percy Markham, as sureties. The mayor, city attorney and finance committee of the council had discussed the sufficiency of the bond before the council meeting and, at the meeting, the bond failed of approval by the mayor, and McCollum was advised that more sureties were necessary. A few days thereafter, the bond was again presented for approval, with the signature of J. M. Turner as an additional surety, and McCollum was again advised that he would have to get more sureties. Later, V. Q. Johnson, Edward Hubbard and E. J. Faut signed the bond as sureties. Harry Markham was then asked to sign the bond as a surety, and, after McCollum had erased the signature of his son, P. W. or Percy Markham, at his suggestion, Harry Markham signed the bond at the place where the signature of P. W. or Percy Markham had previously appeared. On April 24, 1924, McCollum returned the bond to the city attorney. On the same day, the mayor immediately approved the bond, on the advice of the city attorney and finance committee that the sureties were sufficient. Thereupon, McCollum assumed the duties of his office as city treasurer and' deposited all city funds received by him in the Brookfield Trust Company. He was treasurer of that institution also. On December 17, 1924, the Brookfield Trust Company was closed by the State Finance Department, because of its failing condition. On December 24, 1924, McCollum resigned his office as city treasurer, at the request of the mayor, and J. W. Moore was appointed as his successor in that office. The city attorney was present when McCollum turned over his books and accounts to Moore, his successor, on December 27th or 28th, 1924, and made the demand that Mc-Collum turn over to Moore all city funds. At the time of his resignation, McCollum owed the city $23,707.83, according to the reports of an auditing committee of three bankers, appointed by the mayor. to check up his accounts. The deputy finance commissioner, in charge of the Brookfield Trust Company, testified that McCollum's account as city treasurer showed a balance of $23,707.83, and McCollum admitted, on the witness stand, that this was the exact amount of his

debt to the city and that he had never paid any part thereof. There was no dispute at the trial as to any of the other facts above recited.

No evidence was offered tending to show any knowledge on the part of any of the sureties, except Harry Markham, as to the alteration in the bond, prior to its delivery and approval, nor as to their ratification of the alteration thereafter. Hopper, Rogers, W. S. Johnson, Kiel, Hunter, W. H. Johnson, Hoagland, V. Q. Johnson, Hubbard and Faut testified that they did not learn of the alteration until after the trial commenced. Turner said he did not know about it "until months after the bank failure."

The mayor, J. D. Mendenhall, testified positively that he never knew or heard of the alteration in the bond until after the trial commenced on May 18, 1925, and that it was never called to his attention by anybody or in any way until that time; that the first time the bond was presented he "read it over completely," but he did not remember the names of all of the sureties on the bond at that time nor at the time he approved the bond; that he discussed the sureties "in a general way" with the city attorney and finance committee, and relied largely on their advice and recommendation as to the sufficiency of the bond; that they "named three or four men that they thought ought to make the bond good;" that "usually Mr. Kiel, Mr. Turner and Mr. Hopper" were spoken of "as being the strong men on the bond;" and that he did not know whether the names of either Percy Markham or Harry Markham were on the bond when he approved it. He further testified as follows:

"Q. State to the court whether or not you ever had any information or any notice or any knowledge of any alteration being made on that bond that Mr. McCollum gave, by him or anybody else, on the 24th of April, when you approved it? A. *Never did. Never had heard of it.* I won't say it wasn't there but if it was I didn't see it. I can tell you all the circumstances governing it. It is clear to me.

"Q. Did Mr. McCollum ever, at any time or place, discuss with you the question of changing the bond or altering it in any way? A. *He never did*—only that he would get added securities when it was suggested after it was presented the first time."

In his cross-examination, the following appears:

"Q. Was there an apparent erasure of the signature of Harry Markham? A. *I didn't see that at all.*

"Q. You did not look at it then, did you? A. No, sir, *I never heard of an erasure until in this court room.*

"Q. As a matter of fact, you don't know whether, when you approved it, it was signed by any of these sureties? A. I certainly do. I said all the while it was generally discussed and the names had been gone over again and again.

"Q. Well, what did you do? A. You wanted me to say the other day I was careless, but as a matter of being careful, and being a new man and not well posted, and all those men having been reared in Brookfield and knew the people, I left it to their judgment. They in no way insinuated that they had the right, but I took them as my advisers, being the officials of the city, and I was perfectly satisfied in my mind, when they said the bond was sufficient, to sign it. *I did it in good faith.*

"Q. Did you depend altogether upon what they advised you? A. I depended on that and my own judgment."

The city attorney, W. J. Carlon, had held that office for four and a half years. He testified that he prepared the bond (plaintiff's Exhibit 3) and counseled with McCollum and the mayor and finance committee, at different times, concerning the sureties; that on April 24, 1924, he took the bond to the mayor and the mayor approved it immediately and handed it back to him; that he "had it for awhile" and later "delivered it to the city clerk;" that he did not write the names of the sureties in the body of the bond; that, when the bond was first presented, on April 15, 1924, the names of the eight original sureties, including Percy Markham, were written in the body thereof, and the names of the additional sureties were written in the body when the bond came to him "the last time;" and that he *"didn't notice any change in the bond"* at that time. As to his knowledge of the alteration, he was cross-examined as follows:

"Q. Mr. McCollum told you, did he not, that he had erased Percy Markham's name? A. It was my recollection *that was at a later date.*

"Q. When was it he gave you that information? A. Well, I couldn't say. I know he was in a big hurry, appeared to be in a big hurry to get the city money, and the old treasurer's books had been audited and he wasn't paying out any warrants that had been issued and he was in a hurry to get rid of it. It is my recollection I took it up to the mayor and he approved it and *then later* I was looking over the body of the bond to see if all the names of the men who had signed it were written, typewritten, in the body of the bond and *it was then* that I discovered that Percy Markham's name wasn't there and I knew that he had signed.

"Q. Percy Markham's name has been erased from the body of the bond, has it, Judge? A. Well, it looks like it had.

"Q. There appears to be an erasure there, does there not? A. Well, I would say *if one was looking for it, they would find it*—it appears that way.

"Q. And appears from the bond itself that there has been an erasure where the signature of Harry Markham now appears? A. *Well, a bond might go through my hands a hundred times and I wouldn't notice it.*

"Q. That is because your eyesight is bad? A. Possibly so. From my memory of the fact that Percy Markham's name was originally on the bond, I knew it had been changed.

"Q. And you knew when this bond came into your hands at that time after it had been signed by all of these defendants' that the name of Percy W. Markham had formerly been on the bond? A. *I supposed it was on at that time.*

"Q. I say, you knew that his name had been there at that time and it wasn't there at that time? A. *I learned later that it was not.*"

On the cross-examination of R. S. Kathan, the deputy bank commissioner, his *special attention* was directed to the signature of Harry Markham and he said: "Yes, I would state that does show an erasure." When asked if it was perfectly plain and apparent to anyone with good eyesight, he said: "I think so."

McCollum was called to testify by the defendants. He said he took the bond to the mayor the first time, with the first eight sureties on it, including Percy Markham, and "we discussed all the names that was on the bond;" that thereafter, he discussed the matter of sureties with the city attorney, at the mayor's direction; and that he gave the bond to the city attorney, when all of the sureties had signed it, and "called his attention to the name of Harry Markham in the place of Percy Markham."

The finding and judgment of the trial court is in the following form:

"Now again come the parties hereto as heretofore, and the court being fully advised in the premises, having heard all the evidence presented and arguments of counsel, doth find that this action was instituted in Linn County and regularly and legally brought to this county by way of a change of the venue and the court finds it to be an action to recover the sum of $23,707.83 on the official bond of defendant, Walter McCollum, and of the other defendants, his securities thereon, as Treasurer of the City of Brookfield. The court finds that the penalty of said bond is $50,000, and that the defendants are liable thereon for the amount sued for to the plaintiff in said sum, with interest thereon from the date of the filing of the petition herein, January 12, 1925, at the rate of six per centum per annum.

"It is therefore ordered and adjudged by the court that said official bond be and is declared breached and that the plaintiff have and recover of and from the defendants the full penalty thereof, to-wit, $50,000, to be satisfied in full on the payment of the said sum of twenty-three thousand seven hundred and seven dollars and eighty-three cents, with interest thereon from January 12, 1925, at the rate of six per cent per annum, together with the costs of suit taxed at the sum of $ ———— and that execution issue therefor."

I. The contention of counsel for appellants that the mayor had actual or constructive knowledge of the alteration in the bond at the time of its approval is of no avail here. As indicated by the pleadings and the evidence, this was the main issue of fact at the trial. No specific findings on the facts were requested by either side, and, therefore, the general finding by the trial judge ''that the penalty of said bond is $50,000, and that the defendants are liable thereon for the amount sued for to plaintiff'' settled that issue. The finding of a trial judge, sitting as the trier of the facts, is equal to a special verdict, and where, as in this case, there is substantial evidence to support his finding, it will not be interfered with on appeal. [Sec. 1402, R. S. 1919; Craig v. Rhodes, 298 S. W. 756; Phillips v. Wilson, 298 Mo. 186, 250 S. W. 408.] There was no evidence in contradiction of the mayor's testimony that he had no actual knowledge of the alteration in the bond until after the trial commenced. And, after a careful review of the evidence, and an examination of the original bond, which appellants requested to be filed in this court for that purpose, we think the trial judge was fully warranted in finding that the alteration was not so plain and apparent on the face of the bond as to apprise the mayor of the same, and that there was nothing in the attending circumstances which should have prevented the approval of the bond by him.

II. Counsel further contend that the city attorney had knowledge of the alteration in the bond at the time of its approval and that his knowledge was the knowledge of the city, the plaintiff in the case. This argument is likewise untenable. True, McCollum did testify that when he delivered the bond to the city attorney the last time, he ''called his attention to the name of Harry Markham in the place of Percy Markham,'' but it is also true that the city attorney contradicted McCollum's testimony in this particular. The city attorney testified: ''It was my recollection *that was at a later date*. It is my recollection I took it up to the mayor and he approved it and then *later* I was looking over the body of the bond to see if all the names of the men who had signed it were written, typewritten, in the body of the bond and it was *then* that I discovered that Percy Markham's name wasn't there and I knew that he had signed.'' When further interrogated as to his knowledge of the alteration at the time the bond was approved, he said: ''*I didn't notice any change in the bond*. Well, a bond might go through my hands a hundred times and *I wouldn't notice it*.'' Thus, it plainly appears that there was a conflict in the evidence on this question and that the issue of fact so presented was foreclosed by the general finding of the trial judge. And it, therefore,

becomes unnecessary to decide the question of whether or not the knowledge of the city attorney of the alteration in the bond at the time of its approval, if established, would be imputed to the city, as a matter of law.

III. With the facts settled, we come now to the applicable rule of law on the question of the liability of these sureties.

It is conceded that the city of Brookfield is a city of the third class. Relating to cities of that class, Section 8213, Revised Statutes 1919, provides that the mayor, among other things, "shall approve all official bonds."

In the case of State to use of Bothrick v. Potter, 63 Mo. 212, Judge SHERWOOD states the question for determination concisely, as follows: "Whether a curator's bond, regular in form, can be avoided at the instance of a surety, upon the ground that he had signed it under a conditional agreement, made at the time with the principal, that the latter was not to deliver the bond until the signature of a certain person had also been obtained, and that notwithstanding such agreement and in violation of it, the bond was delivered." [Loc. cit. 216.] After an exhaustive review of the previous rulings in this and other jurisdictions, he concluded that such rulings were, with few exceptions, in harmony as to a rule which bound the surety in the case then under consideration. Applying the rule to the facts in that case, he said: "Here the surety who defends this action had invested the principal with an apparent authority to deliver the bond; and there was nothing *on the face of the bond, or in any of the attending circumstances, to apprise the official who accepted it, that there was any secret agreement which should preclude the acceptance of the bond.* And the surety is alone in fault in the matter, as, but for his unwarranted trust in Turley, the latter would never have had it in his power to occasion the loss which the beneficiaries of this bond must suffer, if the defense made by the surety is successful." [Loc. cit. 226.] (Italics ours.) In holding that such an agreement between the principal and his surety constituted no defense to the suit on the bond, he further said: "Again, it concerns the State, that the heritage of the helpless, confided to the protection of her courts, should not suffer detriment. The consequences would be fraught with disaster, and it would be subversive of the plainest dictates of public policy, if sureties in such cases were permitted, by means of some 'ill-remembered conversation,' or some occult understanding, never disclosed but under the shadow of impending loss, to escape liabilities which their own solemn deed and recorded specialty announces them to have incurred." [Loc. cit. 228.]

834

In the later case of State v. McGonigle, 101 Mo. 353, 13 S. W. 758, frequently cited by courts and text-writers, the name of George Dailing, one of the sureties on the county collector's official bond, was erased and the name of John Cain substituted, with the knowledge and consent of the county court, and without the knowledge or consent of the other sureties. On these facts, this court held that the other sureties were discharged from liability on the bond, and that Cain was not liable because "he was wholly ignorant of the fact that Dailing had ever been a party to the bond," and because "he never undertook to become the sole surety." But, in this connection, the court said: "If the name of Dailing had been erased and that of Cain substituted *without the knowledge of the county court,* then we have no hesitancy in saying that *the sureties should not be discharged,* because, by intrusting the bond to Reid, they put it in his power to mislead and deceive the court, and they should suffer the consequences." [Loc. cit. 365, 366.] (Italics ours.) And, in declaring strict adherence to the rule announced in the Potter case, supra, the court further said: "It is now well-established law in this and other jurisdictions that where a surety signs a bond and leaves it in the hands of the principal, to be delivered only upon the condition that it is signed by another person, and the principal delivers the bond to the obligee without complying with the condition, and the obligee takes it *without notice* of the conditional agreement, *the surety will be bound.*" [Loc. cit. 362.] (Italics our.) And finally, the court said: "We have endeavored to lay it down as the better law, that sureties on these official bonds ought not to be discharged until they show *knowledge, on the part of the accepting officers,* of a state of facts which should have precluded the acceptance of the bond, be it a conditional contract between the principal and surety, or *an alteration of the bond as executed by the surety.*" [Loc. cit. 368.] (Italics ours.) [See, also, State ex rel. v. Findley, 101 Mo. 368, 14 S. W. 111; Wolff v. Schaeffer, 74 Mo. 154; State ex rel. v. Hewitt, 72 Mo. 603; State ex rel. v. Modrel, 69 Mo. 152; State ex rel. v. Baker, 64 Mo. 167.]

In the case at bar, the trial judge found that the mayor, or accepting officer and approving authority of the bond in question, had no knowledge of the alteration upon which all of the sureties, except Harry Markham, rest their defense. Failing to establish such knowledge on the part of the mayor, it is perfectly clear that they cannot escape liability. His co-sureties having failed in their defense, it follows that Harry Markham, who was a party to the alteration, is stripped of any defense against his own liability.

The learned trial judge was manifestly right in his conclusions of law. The judgment rendered below is accordingly affirmed. *Higbee* and *Davis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.